**Hermenia JENKINS, Appellant**

v.

**CROSBY INDEPENDENT SCHOOL DISTRICT and Mike Morath in his Official Capacity as State Commissioner of Education,[1] Appellees**

#### NO. 03-15-00313-CV

Court of Appeals of Texas, Austin.

Filed: June 15, 2017

Rehearing Denied July 6, 2017

---

1. We have substituted the current officeholder. *See* Tex. R. App. P. 7.2(a).

Mr. Andrew Lutostanski, Assistant Attorney General, Administrative Law Division, P. O. Box 12548, Capitol Station,

Austin, TX 78711, Mr. David B. Hodgins, Thompson & Horton LLP, 3200 Southwest Freeway, Suite 2000, Houston, TX 77027, for Appellees.

Mr. Kevin F. Lungwitz, The Lungwitz Law Firm, PC, 3005 S. Lamar Blvd., Box D-109-362, Austin, TX 78704, for Appellant.

Before Chief Justice Rose, Justices Pemberton and Field

## OPINION

Bob Pemberton, Justice

After the new superintendent of Crosby Independent School District (the District) reassigned appellant Hermenia Jenkins from the position of principal at an intermediate school within the District to that of an assistant principal at Crosby High School, Jenkins challenged the reassignment pursuant to the District's grievance procedure. After the District's board of trustees voted to deny her complaint, she appealed the board's decision to the Commissioner of Education.[2] The Commissioner affirmed the District's decision, and Jenkins sought judicial review of the Commissioner's decision.[3] The district court affirmed the Commissioner's decision. For the following reasons, we will affirm the district court's judgment.

## BACKGROUND

Jenkins was the principal at Charles R. Drew Intermediate School within the District from 2003 through the end of the 2010–2011 school year. In March 2011, she signed a two-year term contract with the District's board of trustees (the Board) for the school years 2011–2012 and 2012–2013. The contract refers to her as "Employee." Among the contract's terms and conditions were the following:

The Board hereby agrees to employ the Employee and the Employee agrees to serve the Board by engaging in duties as assigned by the Superintendent of the Crosby Independent School District for the school years 2011–2013 with beginning and ending dates as set by the Board.

It is understood and agreed by the parties to this Contract that the Superintendent of the Crosby Independent School District shall have the right to assign such duties to the Employee as the Superintendent shall deem proper; and since the Employee is not employed to fill a specific position or assignment, the Superintendent may assign or reassign the Employee to either or additional duties for which he or she is professionally certified or otherwise qualified to perform.

In June 2011, the District's new superintendent notified Jenkins that she was being reassigned from her position as principal at the intermediate school to that of an assistant principal at Crosby High School, with a start date of August 1, 2011. Her compensation in the new position was the same as it had been in her position as principal.

Pursuant to the District's three-level grievance procedure, Jenkins submitted a written complaint in July 2011 objecting to her reassignment from the position of principal to assistant principal on the as-

---

**2.** *See* Tex. Educ. Code § 7.057(a)(2)(A) (granting right to appeal to Commissioner of Education to person aggrieved by decision of school district board of trustees that violates "school laws of this state"); 19 Tex. Admin. Code § 157.1073 (Tex. Educ. Agency, Hearings Brought Under Texas Education Code, § 7.057).

**3.** *See* Tex. Educ. Code § 7.057(d) (granting right to judicial review to person aggrieved by decision of Commissioner of Education).

serted ground that "[t]he duties of Principal and Assistant Principal [were] not within the same professional capacity."[4] Because the positions of principal and assistant principal were not in the "same professional capacity," Jenkins reasoned, she should have been provided with the administrative process under subchapter E of chapter 21 of the Texas Education Code—the Term Contract Nonrenewal Act (TCNA)—before being reassigned to the position of assistant principal.[5] As relief, Jenkins sought reassignment to her prior position of principal at the intermediate school or to "a mutually agreeable position that would reflect a 'forward progression' in [her] career and on [her] resume."

Attached to her complaint were the superintendent's notice of reassignment, "job descriptions of principal and assistant principal" from job postings on the District's website,[6] her employment contract, and her current-year evaluation. Because the only administrator with authority to

remedy her alleged complaint was the superintendent, the grievance procedure for her complaint began at level two. The superintendent held a level-two conference on August 25, 2011, at which Jenkins was represented by counsel. In addition to her complaint with attachments, Jenkins submitted yearly progress results for schools within the District and campus accountability ratings for the 2010–2011 school year.

Following this conference, the superintendent provided Jenkins with a "level two decision letter." In the letter, the superintendent denied Jenkins's complaint, explaining that she had been reassigned "from one administrative position to another administrative position." He added that the reassignment was in the District's "best interests," in his view, because the intermediate school would "benefit from new and fresh administrative leadership," and Jenkins's "skill set could meet a real

**4.** In her written complaint, Jenkins also asserted that: (i) the reassignment violated her rights under section 11.202 of the Texas Education Code, section 150.1021 of Title 19 of the Texas Administrative Code, and local policy which, in her view, entitled her as a principal to be "the instructional leader of the campus and to supervise staff," *see* Tex. Educ. Code § 11.202 (addressing principals' roles and duties); 19 Tex. Admin. Code § 150.1021 (Tex. Educ. Agency, General Provisions for Principal Appraisal); and (ii) she had "performed [her] duties lawfully and faithfully and there [was] no lawful basis for [her] removal as campus principal."

**5.** *See* Tex. Educ. Code §§ 21.206(b) ("The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year."), .207 (addressing hearing on proposed non-renewal of term contract and granting "teacher" rights to representation, hear evidence supporting reason for non-renewal, cross-examine adverse witnesses, and present evidence); *see also id.*

§ 21.201(1) (including "principal" within meaning of "teacher" for purposes of TCNA); *Dodd v. Meno*, 870 S.W.2d 4, 5 (Tex. 1994) ("This Court recently held that the TCNA gives teachers a constitutionally protected property interest in continued employment." (citing *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 420 (Tex. 1993))).

**6.** The two job postings from the District's website that Jenkins attached to her complaint show: (i) a posting dated July 12, 2007, for an assistant principal position, with the description to "[p]rovide students with appropriate learning activities and experience designed to fulfill their potential for intellectual, emotional, physical and social growth"; and (ii) a posting dated June 28, 2005, for an elementary principal position, with a description that included that "[t]he person chosen should be bright, experienced, and capable of working with a staff having the same capabilities." According to the postings, both positions required "Texas Mid-Management/Administrative Certification" and "Certified Professional Development and Appraisal System (PDAS Appraiser)."

need at our High School." According to the superintendent, "Crosby High School [had] been deemed unacceptable [in the TEA's ratings system] and [would] require a great deal of administrative support and focus to turn the school around into the right direction and meet the needs of our students. [Jenkins's] previous experiences, and [her] skills and abilities with organization, problem solving, and attention to detail [would] be very valuable and helpful in this very important endeavor." He also listed her specific "numerous administrative responsibilities" in detail as to her reassigned position of assistant principal at the high school, a "much larger campus." [7]

Jenkins appealed the superintendent's decision to the Board, which it considered in a closed meeting in October 2011, a transcription of which is in evidence. Both Jenkins and the superintendent were present and represented by counsel, and they explained their respective positions. Jenkins, who had been working as an assistant principal at the high school since the beginning of the school year, did not dispute the superintendent's characterization of her duties as the assistant principal but insisted that the reassignment was "a neg-ative mark on her resume" and "not forward progression" because she had started as an assistant principal at the high school before being promoted to the position of principal at the intermediate school. Jenkins also touted what she perceived to be her successful leadership as the principal at the intermediate school. In response, the superintendent explained to the Board that the high school had become "academically unacceptable" and that his decision to move Jenkins "was more about what she could bring to Crosby High School"—"to help push Crosby High School on further with an experienced administrator that could bring some skill sets to the high school"—while also "bring[ing] some fresh blood" to the intermediate school. At the conclusion of the meeting, the Board voted to deny Jenkins's complaint.

Jenkins then appealed the Board's decision by filing a petition for review with the Commissioner of Education under section 7.057 of the Texas Education Code.[8] The matter was assigned to an administrative law judge (ALJ) who issued a proposal for decision, recommending that Jenkins's pe-

---

7. The superintendent described Jenkins's duties as an assistant principal at the high school as follows:

> At this much larger campus, you will continue to have numerous administrative responsibilities including, but not limited to, appraising and making recommendations regarding staff, helping provide instructional leadership, implementing student discipline, facilitating and assisting with the development of an effective campus improvement plan based on student needs, providing leadership in the identification, evaluation, and selection of instructional programs, materials, and equipment with regard to increased student achievement, training teachers to utilize various instructional strategies to meet student learning needs, assisting in the planning and implementation of staff development programs designed to fulfill the professional growth needs of the high school staff, planning and implementing staff development programs designed to fulfill the professional growth needs of the high school staff, working directly with parents and patrons on solving problems and addressing numerous issues that may be presented, facilitating the implementation of new assessment and working to support the alignment of campus and district curriculum, as well as numerous other administrative duties as assigned.

8. See Tex. Educ. Code § 7.057(a)(2)(a); 19 Tex. Admin. Code § 157.1073 (addressing hearings brought under section 7.057 of Texas Education Code, explaining that Commissioner reviews school board decisions under substantial evidence standard of review and adopting chapter 2001 of Administrative Procedure Act).

tition for review be denied in part and dismissed in part. Relevant to this appeal, the ALJ found that the Commissioner had jurisdiction over Jenkins's claims that the District had violated section 21.206(b) of the Texas Education Code, but then concluded that the District did not reassign Jenkins in violation of section 21.206(b).[9] The Commissioner thereafter denied the petition in part and dismissed it in part as recommended by the ALJ, and Jenkins sought judicial review of the Commissioner's decision. The district court affirmed the Commissioner's decision, and this appeal followed.

## ANALYSIS

Jenkins raises two issues on appeal. In her first issue, Jenkins argues that she could not be "involuntarily reassigned to assistant principal without receiving the quasi-due-process protections of the contract nonrenewal process" under the TCNA because the position of principal is not in the "same professional capacity" as the position of assistant principal.[10] In her second issue, Jenkins argues that the Commissioner incorrectly interpreted her term contract by finding that she was an "'administrator,' a term not found in her contract or defined in law, but broad enough to encompass her reassignment from principal to assistant principal."[11]

### Standard of review

 Our review of the Commissioner's decision to affirm the decision of the Board is governed by the same analysis as in the district court and before the Commissioner—the familiar "substantial-evidence" rule that is codified in Section 2001.174 of the Administrative Procedure Act.[12] Under this standard, we must re-

---

9. The ALJ also found that the Commissioner had jurisdiction over Jenkins's claims that the District violated section 11.202 of the Texas Education Code and section 150.1021 of Title 19 of the Texas Administrative Code. See Tex. Educ. Code § 11.202 (defining duties and responsibilities of principal); 19 Tex. Admin. Code § 150.1021 (Tex. Educ. Agency, General Provisions for Principal Appraisal). Those claims, however, were dependent on a violation of section 21.206(b). We also observe that, in his conclusions of law, the ALJ references "section 11.20"—not section 11.202—but the reference appears to be a typographical error.

 The ALJ further found that the Commissioner did not have jurisdiction over Jenkins's claim that the District violated its own policies or her claim that the District's superintendent arbitrarily and capriciously reassigned her in violation of section 11.201(d) of the Texas Education Code. See Tex. Educ. Code §§ 7.057(a) (authorizing appeal to Commissioner by person who "is aggrieved by: (1) the school laws of this state; or (2) actions or decisions of any school district board of trustees that violate: (A) the school laws of this state; or (B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee"), 11.201(d) (describing duties of superintendents). Jenkins does not challenge these jurisdictional findings on appeal.

10. See Tex. Educ. Code §§ 21.206(b), .207.

11. As a threshold issue, the District argues that Jenkins's claims did not involve an expiring contract and, consequently, were not ripe for the Commissioner's review, as pleaded. According to the District, the proper pleading for Jenkins would have been "an improper demotion" because her case was a "mid-contract reassignment case." Jenkins, however, was notified of the reassignment in June 2011 and filed her complaint in July 2011, which was before she began in her new position as an assistant principal for the 2011–2012 school year. According to the superintendent's notice of reassignment, Jenkins's "start date as an assistant principal at Crosby High School [was] August 1, 2011." Accordingly, we will proceed to the merits of Jenkins's arguments.

12. See Tex. Gov't Code § 2001.174; 19 Tex. Admin. Code § 157.1073(h) ("Standard of review in hearings against school district. If no findings of fact are made by the board of trustees, the commissioner shall determine

verse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are":

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted · exercise of discretion.[13]

Essentially, this is a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record.[14] "The test is not whether the agency made the correct conclusion in our view, but whether some reasonable basis exists in the record for the agency's action." [15] We apply this analysis without def-

erence to the district court's judgment.[16] We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the contestant to demonstrate otherwise.[17] Ultimately, we are concerned not with the correctness of the agency's decision, but its reasonableness.[18]

■ Substantial-evidence analysis entails two component inquiries: (1) whether the agency made findings of underlying facts that logically support the ultimate facts and legal conclusions establishing the legal authority for the agency's decision or action and, in turn, (2) whether the findings of underlying fact are reasonably supported by evidence.[19] The second inquiry, which has been termed the "crux" of substantial-evidence review,[20] is highly deferential to the agency's determination: "substantial evidence" in this sense "does not mean a large or considerable amount of evidence"—in fact, the evidence may even preponderate against the agency's finding—but requires only "such relevant evidence as a reasonable mind might accept as adequate to support a [finding] of fact." [21] Likewise, we "may not substitute

whether the decision is supported by substantial evidence by judging whether any permissible findings of fact support the board's decision."); *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 443 (Tex. App.—Austin 2011, no pet.) (concluding that substantial-evidence standard of review applies to scope of judicial review of Commissioner decisions). ·

13. Tex. Gov't Code § 2001.174(2).

14. *See Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452–53 (Tex. 1984).

15. *Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied) (citing *Railroad Comm'n of Tex. v. Pend Oreille Oil & Gas Co.*, 817 S.W.2d 36, 41 (Tex. 1991)).

16. *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam).

17. *See Charter Med.-Dallas*, 665 S.W.2d at 453.

18. *See Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 510–11 (Tex. App.—Austin 2007, no pet.).

19. *See Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11, 26–27 (Tex. App.—Austin 2013, no pet.) (citing *Charter Med.-Dallas*, 665 S.W.2d at 453).

20. *See Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.) (quoting John E. Powers, *Agency Adjudications* 163 (1990)).

21. *Slay*, 351 S.W.3d at 549 (citations omitted).

[our] judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion."[22] In contrast, the first inquiry, concerning the extent to which the underlying facts found by the agency logically support its ultimate decision or action, may entail questions of law that we review de novo.[23] Guided by this well-established standard of review, we address Jenkins's issues challenging the Commissioner's decision.

**Are the positions of principal and assistant principal in the "same professional capacity"?**

Jenkins's first issue turns on the meaning of the phrase "same professional capacity" in the context of section 21.206(b) of the Texas Education Code.[24] As previously stated, section 21.206 is within the TCNA, which provides an administrative process for nonrenewal of a teacher's term contract.[25] Section 21.206 specifically addresses the required notice to renew or nonrenew a teacher's term contract. Subsection (a) of section 21.206 addresses how and when notice of the renewal or nonrenewal must be given, and subsection (b) then provides:

> The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.[26]

For purposes of the TCNA, the position of principal falls within the meaning of "teacher."[27] Thus, if principal and assistant principal are not in the "same professional capacity," as Jenkins argues, she was entitled to the TCNA's administrative process prior to being reassigned to the position of assistant principal.[28]

To understand the meaning of the phrase "same professional capacity" in section 21.206(b), we look to well-established principles of statutory construction.[29] If the "language is unambiguous,

**22.** Tex. Gov't Code § 2001.174.

**23.** *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011); *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000) (citing *Charter Med.-Dallas*, 665 S.W.2d at 453); *City of El Paso v. Public Util. Comm'n*, 344 S.W.3d 609, 618–19 (Tex. App.—Austin 2011, no pet.).

**24.** Tex. Educ. Code § 21.206(b).

**25.** *See id.* §§ 21.201–.213; *see also id.* § 21.201 (defining "term contract" to mean "any contract of employment for a fixed term between a school district and a teacher").

**26.** *Id.* § 21.206(a), (b).

**27.** *See id.* § 21.201 (including "principal" within meaning of "teacher" for purposes of TCNA).

**28.** *See id.* § 21.207 (addressing required hearing on proposed non-renewal and granting teacher rights at hearing, including to hear evidence supporting reason for non-renewal, cross-examine adverse witnesses, and present evidence).

**29.** *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam) (quoting *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)); *accord Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015) ("[W]e initially limit our statutory review to the plain meaning of the text as the sole expression of legislative intent, *see State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002), unless the Legislature has supplied a different meaning by definition, a different meaning is apparent from the context, or applying the plain meaning would lead to absurd results, *see Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010)."); *Nathan v. Whittington*, 408 S.W.3d 870, 872 (Tex. 2013) (per curiam) ("Our objective is to give effect to the Legislature's intent, and we do that by applying the statutes' words according to their plain and common meaning unless a contrary intention is apparent from the statutes' context." (citing *Molinet v. Kim-*

'we interpret the statute according to its plain meaning,' "[30] and " '[w]e presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted.' "[31] "If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation," "we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule."[32]

Because the phrase "same professional capacity" is not defined in the Texas Education Code, we look to the ordinary meaning of the phrase's words in context. The word "same" (when used as an adjective) means "resembling in every way: not different in relevant essentials at one time."[33] The ordinary meaning of the word "professional" (when used as an adjective) denotes "of, relating to, or characteristic of a profession or calling," and the related word "profession" commonly means "a principal calling, vocation, or employment."[34] And the word "capacity" (when used as a noun) ordinarily signifies "legal qualification, competency, power, or fitness."[35] Applying the ordinary meanings of these words in the context of section 21.206, we conclude that there is room for policy determinations and thus we will defer to the Commissioner's interpretation if it is reasonable and does not contradict the plain language of the statute.[36]

In his decision, the Commissioner described the meaning of the phrase "same

---

[brell], 356 S.W.3d 407, 411 (Tex. 2011))); *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("To discern [legislative] intent, we begin with the statute's words.").

**30.** *Coleman*, 512 S.W.3d at 899 (quoting *Lippincott*, 462 S.W.3d at 509); *accord Abutahoun*, 463 S.W.3d at 46 (" 'If the statute is clear and unambiguous, we must read the language according to its common meaning without resort to rules of construction or extrinsic aids.' " (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014) (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (internal quotation marks omitted)))); *TGS–NOPEC Geophysical Co.*, 340 S.W.3d at 439 ("[I]f a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." (citing *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 177 (Tex. 2004))).

**31.** *Coleman*, 512 S.W.3d at 899 (quoting *Lippincott*, 462 S.W.3d at 509); *accord TGS–NOPEC Geophysical Co.*, 340 S.W.3d at 439 ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008))); *DeQueen*, 325 S.W.3d at 635 ("We presume the Legislature selected language in a statute with care

and that every word or phrase was used with a purpose in mind." (citing *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008)); *Chastain v. Koonce*, 700 S.W.2d 579, 582 (Tex. 1985)).

**32.** *TGS–NOPEC Geophysical Co.*, 340 S.W.3d at 438 (citations omitted); *see Finance Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 585 (Tex. 2013) ("Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute."); *Dodd*, 870 S.W.2d at 7 (recognizing that TCNA should be construed broadly as remedial statute but deferring to "Commissioner's reasonable determination in an area where he possesses considerable authority and expertise"); *Poole*, 344 S.W.3d at 444 (deferring to Commissioner's interpretation of Texas Education Code that was "reasonable and [did] not contradict the plain language of the statute").

**33.** *Webster's Third New Internat'l Dict.* 2007 (2002).

**34.** *Id.* at 1811.

**35.** *Id.* at 330.

**36.** See *TGS–NOPEC Geophysical Co.*, 340 S.W.3d at 438; *see also Norwood*, 418 S.W.3d at 585; *Poole*, 344 S.W.3d at 444.

professional capacity" by citing and quoting a seminal administrative decision of his office, *Barich v. San Felipe-Del Rio Consolidated Independent School District*.[37] In that proceeding, the Commissioner concluded that an ROTC instructor and a teacher were in the "same professional capacity" where there was "no reduction in salary or status."[38] The Commissioner concluded that the Legislature did not intend for the phrase to mean the "exact same position," explaining in part:

It is more reasonable to conclude that the legislature, by using the term, "same professional capacity" (instead of "the exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual reassignment authority. . . .

In some instances, the validity of a particular placement will be clear. For example, an administrator who does not receive the required notice by April 1 may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a nurse; a nurse may

not be placed in the capacity of a librarian; etc.

In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional capacity (e.g., administrator), but nevertheless, be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such a placement include, but are not necessarily limited to, differences in authority, duties, and salary.[39]

The Commissioner also cited other Commissioner decisions that have applied the *Barich* factors when determining whether particular placements, including from the position of principal to assistant principal, were within the "same professional capacity."[40]

Relying on these and other Commissioner decisions, the Commissioner concluded that a reassignment from the position of principal to assistant principal may be within the "same professional capacity" and that Jenkins's " 'professional capacity' under section 21.206(b) was 'administrator.' "[41] The Commissioner further con-

---

**37.** Docket No. 117-R1a-484 (Comm'r Educ. 1985).

**38.** *Id.* at 10.

**39.** *Id.* at 7–8.

**40.** *See, e.g., McCoy v. Kermit Indep. Sch. Dist.*, Docket No. 004-R3-0908, at 6–7 (Comm'r Educ. 2012) (determining that school district did not violate section 21.206(b) when it reassigned employee from position of principal to assistant principal and explaining that "the change from principal to assistant principal alone" was insufficient to show violation of section 21.206(b)); *see also Gustafson v. Canutillo Indep. Sch. Dist.*, Docket No. 113-R-10-0812, at 9–12, 20 (Comm'r Educ. 2014) (collecting Commissioner decisions that followed *Barich* analysis and determining that petitioner was properly reassigned in the "same pro-

fessional capacity" when assigned from position of principal at high school to assistant principal at elementary school). As Jenkins's attorney acknowledged during the Board meeting, "The [Commissioner's] case law is not with us today."

**41.** *See, e.g., Carpenter v. Wichita Falls Indep. Sch. Dist.*, Docket No. 247-R3-491, at 4 (Comm'r Educ. 1991) (observing that "consistent view of the Commissioner that the TCNA balanced its grant of limited tenured rights against the considerable personnel management problems it might cause if imposed inflexibly" and finding that "generic 'administrator' position ... consistent with the policies of the TCNA"); *see* Tex. Educ. Code §§ 21.003(a) (including among employees required to hold appropriate certificate or permit "administrator" (and not principal or

cluded, "A contract can establish a teacher's professional capacity under Texas Education Code 21.206(b) if the professional capacity is not impermissibly broad. Whether a professional capacity is impermissibly broad is determined by comparing differences in authority, duties, and salary and other relevant factors. In many cases, a professional capacity of 'administrator' will not be impermissibly broad for a reassignment." The Commissioner further concluded: "As the fact that a term contract employee is employed in a principal position does not make the employee's professional capacity 'principal,' Respondent did not improperly reassign Petitioner to a non-principal position in violation of Texas Education Code section 21.206(b)."

Under her proposed interpretation of section 21.206(b), Jenkins argues that the position of principal is its own "professional capacity"—that it is "one of a kind" like the position of superintendent—and not within an "administrator" capacity. As support for this position, Jenkins cites adjacent statutory provisions in the Texas Education Code addressing the duties of principals and superintendents [42] and re-

lies on *Board of Trustees of Crystal City Independent School District v. Briggs.*[43] In that case, our sister court concluded, in the context of the position of a superintendent, that there was a "vast difference in the position of superintendent of a district answerable only to the Board of Trustees and that of a teacher in the schools" and that superintendent could only be assigned to the position of superintendent.[44] Jenkins seeks a similar bright-line rule that the position of principal is in its own "professional capacity" so that a proposed reassignment from the position of principal would require a school district to comply with the TCNA's administrative process.

Jenkins also relies on section 21.201(1) of the TCNA to support her proposed bright-line rule as to the position of "principal." That section defines "teacher" for purposes of the TCNA to mean "a superintendent, principal, supervisor, classroom teacher, school counselor, or other full-time professional employee who is required to hold a certificate under Subchapter B or a nurse."[45] In his decision, the Commissioner's conclusions of law included that the positions described in the first sentence of section 21.201(1) "may or may

superintendent)), .033 (requiring "two public school administrators" on State Board for Educator Certification), .047 (referencing "training of public school teachers and administrators"), .354 (addressing "appraisal of certain administrators" but expressly excluding appraisal of performance of principal from application of section), .355 (making "document evaluating the performance of a teacher or administrator" confidential), .4032 (tying reduction of salary of classroom teachers to reduction of salaries of "district administrator or other professional employee"), .4511 (addressing professional development activities for "public school teachers and administrators"); *see also* Tex. Educ. Code § 21.046 (listing qualifications for certification as superintendent or principal); 19 Tex. Admin. Code § 241.1(d) ("The holder of the Principal Certificate issued under the provi-

sions of this chapter may serve as a principal or assistant principal in a Texas public school.").

42. Tex. Educ. Code §§ 11.201 (defining position of superintendent and outlining duties), .202 (defining position of principal and outlining duties).

43. 486 S.W.2d 829 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.).

44. *Id.* at 831, 835.

45. *See* Tex. Educ. Code § 21.201(1). Subsection (1) also provides that: "The term does not include a person who is not entitled to a probationary, continuing, or term contract under Section 21.002, an existing contract, or district policy." *Id.*

not be professional capacities for purpose of Texas Education Code section 21.206(b)." In contrast with this conclusion, Jenkins argues that the listed positions in section 21.201(1) establish separate "professional capacit[ies]" for purposes of section 21.206(b), and she finds significant the omission of "administrator" in section 21.201(1). Focusing on the definition of "teacher" in section 21.201(1) that includes "supervisor" and not "administrator," she argues that the Commissioner "has confused 'administrator' with 'supervisor.'" Jenkins further cites section 21.002 of the Texas Education Code which includes "principal" as a position that requires an employment contract.[46]

The definition of "teacher" in section 21.201(1), however, does not refer to the phrase "same professional capacity" but serves to "draw[ ] a line between those employees required to hold a certificate and those who are not" for purposes of the applicability of the TCNA.[47] We also observe that the inclusion of the phrase "other full-time professional employee who is required to hold a certificate under Subchapter B" within the meaning of "teacher" in section 21.201(1) is inconsistent with Jenkins's proposed interpretation that the listed positions in that subsection are each their own separate "professional capacit[ies]." Further, had the Legislature intended for the definition of "teacher" to delineate positions that are in their own "professional capacit[ies]," it could have said so.[48]

Viewing sections 21.201(1) and 21.206(b) in relation to each other and in the context of the TCNA, we conclude that the Commissioner's interpretation—that the listed positions that fall within the meaning of "teacher" in section 21.201(1) "may or may not" be within the "same professional capacity" as that phrase is used in section 21.206(b)—is reasonable and does not contradict the language of the statutes.[49] We also conclude that the Commissioner's interpretation of section 21.206(b)—that whether a reassignment from the position of principal to a different position is within "the same professional capacity" depends on the particular circumstances, comparing authority, duties, compensation and other relevant factors—is reasonable and does not contradict the language of the statute. As a result, we will defer to the Commissioner's interpretation and affirm his decision if substantial evidence supports his conclusion that Jenkins's reassignment was within the "same professional capacity."[50]

In that regard, the parties join issue with whether Jenkins's challenge to the Commissioner's decision was based on

---

46. *See id.* § 21.002 (requiring school districts to employ "each classroom teacher, principal, librarian, nurse, [and] school counselor" under probationary, continuing, or term contract).

47. *Dodd*, 870 S.W.2d at 7; *see* Tex. Educ. Code § 21.201(1).

48. *See Coleman*, 512 S.W.3d at 899 (presuming that "the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted"). *Cf.* Tex. Educ. Code §§ 21.0452(b)(4)(B) (referring to "students of limited English proficiency, as defined by section 29.052"), .154(4)

(referring to "discharged for good cause as defined by Section 21.156").

49. *See Dodd*, 870 S.W.2d at 7 (deferring to Commissioner's "reasonable interpretation in an area where he possesses considerable authority and expertise"); *Poole*, 344 S.W.3d at 444; *see also TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 438 (stating that courts normally defer to agency's interpretation when "room for policy determinations" unless plainly erroneous or inconsistent with language).

50. *See Poole*, 344 S.W.3d at 444.

her particular circumstances or limited to her legal argument that a principal can only be assigned to a principal position after compliance with the TCNA's administrative process.[51] Assuming without deciding that Jenkins's complaint was not limited to her legal argument seeking a bright-line rule regarding principals but included a challenge based on her particular circumstances, we consider whether substantial evidence supported that Jenkins's particular reassignment from principal at the intermediate school to assistant principal at the high school was within the "same professional capacity" and, thus, did not violate section 21.206(b).[52]

"In all hearings filed against a school district, the commissioner's decision shall be based on a review of the local record." [53] Because the Board did not make findings of fact, the Commissioner reviewed the local record to "determine whether the decision [was] supported by substantial evidence by judging whether any permissible findings of fact support[ed] the board's decision." [54] In his decision, the Commissioner found that "[t]he local record does not indicate with specificity what Petitioner's duties as assistant principal at Crosby High School are." The Commissioner also explained that there was "little in the record that indicates what duties Petitioner had at those two positions." The Commissioner, however, also found: .

> In the present case, Petitioner was reassigned from the position of principal of an intermediate school to the position of assistant principal of a high school.... The record does not demonstrate that applying the Commissioner's precedent as to what is the same "professional capacity" results in a conclusion that the two positions were in different professional capacities.

The local record included the transcript of the Board's meeting. During the meeting, both the superintendent and Jenkins presented their competing positions. The superintendent explained to the Board his decision-making process as the new superintendent in evaluating employees working in the District and that, after an assistant principal at the middle school resigned, rather than "making a simple one-to-one move," he evaluated whether that was in the "best interest" of the District or if they could "get stronger by approaching it in a different direction" and that "[t]here were other moves involved in this situation as

---

51. In her exceptions to the ALJ's proposal for decision, Jenkins challenges the ALJ's finding that she failed to raise the comparative analysis to her particular circumstances and explains that she tried to find out her new duties, but she was required to file her grievance in the summer and that the job descriptions provided by the District in response to her public information request were unhelpful. Among his arguments, the Commissioner argues that Jenkins failed to raise the issue of her particular circumstances in her petition for review. *See* 19 Tex. Admin. Code § 157.1051(b) (Tex. Educ. Agency, Petition for Review) (stating that "commissioner will not consider any issue not raised in the petition for review"). In his decision, the Commissioner also explained: "Petitioner's claim is not that her particular circumstance, comparing authority, duties, compensation and

other relevant factors, the two positions were in separate professional capacities. Petitioner's claim is that a principal may only be reassigned to another principal position."

52. *See Charter Med.-Dallas*, 665 S.W.2d at 452–53; *Slay*, 351 S.W.3d at 549; *Sanchez*, 229 S.W.3d at 510–11.

53. 19 Tex. Admin. Code § 157.1073(f); *see id.* § 157.1073(d) (requiring local record to include "tape recording or a transcript of the hearing at the local level"; "all written pleadings, motions, and intermediate rulings"; "tape recording or transcript of the oral argument before the board of trustees"; and "the decision of the board of trustees").

54. *Id.* § 157.1073(h).

well." As to Jenkins's particular reassignment, the superintendent referred to Jenkins as an "experienced administrator" and elaborated his reasons for the reassignment as follows:

> And in this case, the move for Ms. Jenkins, I would say it was more about what she could bring to Crosby High School than what she wasn't bringing to Drew Intermediate School. But, you know, the generic answer that I'll give and the larger answer that I'll give is that when I step back and look at it from a larger perspective, I believe that it was to the benefit of the district as a whole and it's specifically for the campus—high school campus that had become academically unacceptable. As the new Superintendent, to make a move in the manner that I did was to help push Crosby High School on further with an experienced administrator that could bring some skill sets to the high school and to bring some fresh blood ... to Drew Intermediate School.

In her statements to the Board, Jenkins referred to and discussed the superintendent's level-two decision letter, referred to an assistant principal as an "administrator," stated that she was "very familiar with the role of an A.P.," and described her "present assignment as an A.P. that requires daily routines and supervision of numerous after-school activities." At the times of the level-two conference with the superintendent and the hearing before the Board, Jenkins was working as the assistant principal at the high school, and she did not dispute her employment as an "administrator" or the superintendent's characterization of her particular duties as the assistant principal.[55] Further, although she did distinguish the principal's role as the leader of a campus and her role as an assistant principal "to follow that lead," she did not dispute that she was transferred to a much larger campus with significant administrative responsibilities and that her salary remained the same after the reassignment.

Applying the applicable standard of review and assuming without deciding that Jenkins's complaint included a challenge based on her particular circumstances, we conclude that there was a reasonable basis in the local record for concluding that, based on her particular circumstances, Jenkins's reassignment from principal at the intermediate school to assistant principal at the high school was within the "same professional capacity." Thus, we conclude that the Commissioner's decision affirming the Board's decision was supported by substantial evidence and overrule Jenkins's first issue.[56]

**Did the Commissioner incorrectly interpret Jenkins's term contract?**

In her second issue, Jenkins argues that the Commissioner incorrectly interpreted her term contract by finding that she was an "administrator" under the contract's terms. Jenkins argues that the contract was ambiguous by referring to

---

**55.** During the board meeting, both parties referenced the superintendent's description in his level-two decision letter of Jenkins's duties in her new position, and the District asserted that "it's undisputed that it's an administrative position with significant responsibilities to make a difference for students." Although Jenkins argues that the letter itself is not evidence, Jenkins did not dispute that her actual job duties in her new position as assistant principal were comparable with statutory duties of principals as stated in section 11.202 of the Texas Education Code. *See* Tex. Educ. Code § 11.202 (describing principals' duties); *see also Charter Med.-Dallas,* 665 S.W.2d at 453 (stating that burden is on contestant to show agency's decision was not supported by substantial evidence).

**56.** *See Charter Med.-Dallas,* 665 S.W.2d at 452–53; *Slay,* 351 S.W.3d at 549; *Sanchez,* 229 S.W.3d at 510–11.

her as a "generic 'employee,'" that "employee" is not a "legitimate professional capacity," and that the Commissioner should have construed the contract narrowly against the District (as the author) as a contract for the position of principal, instead of as a contract for the position of administrator.

Given our analysis concerning her first issue, however, Jenkins has not identified a new, different, or stronger right independent of section 21.206(b) of the TCNA that would entitle her to the relief that she seeks based on the terms of her contract. Under the express language of the contract, as well as section 11.201(d)(2) of the Texas Education Code, the superintendent had the express authority to reassign Jenkins to the position of assistant principal at the high school.[57] Under the contract's terms, the parties agreed that she could be reassigned as the superintendent deemed proper to other duties for which she was "professionally certified or otherwise qualified to perform." Jenkins does not dispute that she was professionally certified to be an assistant principal.[58] We overrule Jenkins's second issue.

## CONCLUSION

Having concluded that the Commissioner's decision was supported by substantial evidence, we affirm the district court's final judgment affirming the Commissioner's decision.

---

**57.** *See* Tex. Educ. Code § 11.201(d)(2) (including among superintendent's duties, general "responsibility for the assignment, supervision, and evaluation of all personnel of the district other than the superintendent"); *see also Pasqua v. Fort Stockton Indep. Sch. Dist.,* Docket No. 011-R3-1102, at 7 (Comm'r Educ. 2004) (determining that reassignment of em-

ployee who was in certified administrator position from high school principal to middle school assistant principal did not violate employee's contract).

**58.** *See* 19 Tex. Admin. Code § 241.1(d) (providing that holder of Principal Certificate may serve as principal or assistant principal).