

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-17-00135-CV

___

LEONARD MICHAEL HABERMAN, APPELLANT

V.

TEXAS MEDICAL BOARD, ET AL., APPELLEES

___

On Appeal from the 250th District Court
Travis County, Texas[1]
Trial Court No. D-1-GN-16-004988, Honorable Gisela D. Triana, Presiding

___

September 25, 2018

MEMORANDUM OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

This is an appeal of a contested case under the Texas Administrative Procedure Act.[2] Leonard Michael Haberman, appellant, filed an application with the Texas Medical Board for a license to practice medicine. After the Board determined he was ineligible for

___

[1] Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3

[2] TEX. GOV'T CODE ANN. ch. 2001 (West Supp. 2017 and West 2016).

a license, Haberman filed suit for judicial review in the district court of Travis County.  The district court affirmed the Board's order, and Haberman filed this appeal.  We affirm.

Background

Haberman earned a bachelor's degree in chemistry from New York University and a doctoral degree in chemistry from the University of Minnesota.  He also received a master's degree in business from the University of Texas.  Following an eighteen-year career at Shell Chemical and its affiliates, Haberman returned to school as a medical student.  He graduated from the Texas Tech University Health Sciences Center School of Medicine in 2009.  He then joined a general surgery residency program at Baylor College of Medicine in Houston, but left the program after eight months.  In 2011, he entered a post-graduate medical education program in clinical and anatomic pathology in Colorado Springs, Colorado.  The program was accredited by the Accreditation Council on Graduate Medical Education and sponsored by Catholic Health Initiative Colorado d/b/a Centura Health—Penrose-St. Francis Health Services.

Haberman completed the first two years of the program; however, he was placed on academic probation for some of that time.  Four months into his third year, Haberman was dismissed from the residency program for lack of improvement.

In 2014, Haberman applied to the Board for licensure.  His application was referred to the Board's licensure committee for consideration.  Based on Haberman's dismissal from the residency program, the committee determined that Haberman had been subject to "disciplinary action" and was therefore ineligible for a license.

2

The Board adopted the committee's recommendation. Haberman was advised of his right to contest the decision at a hearing at the State Office of Administrative Hearings (SOAH), which he did. Following the SOAH hearing, the administrative law judge (ALJ) issued a proposal for decision which included factual findings and conclusions of law. The ALJ determined that the Board had authority to deny Haberman's application for a medical license. The Board then issued a final order adopting the ALJ's findings and conclusions and determining Haberman ineligible for a Texas medical license. The Board denied Haberman's request for a rehearing and Haberman sought judicial review. The trial court determined that the Board's order was supported by substantial evidence and affirmed it. Haberman filed this appeal, contending that his dismissal from the residency program was not "disciplinary action," and that he meets the requirements for licensure in Texas.

## Analysis

### Issue 1: Substantial Evidence

In his first issue, Haberman argues that the Board's final order is not supported by substantial evidence. When reviewing an agency decision under the "substantial evidence" standard, a court "may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion . . . ." TEX. GOV'T CODE ANN. § 2001.174 (West. 2016). Whether the agency's order satisfies the substantial-evidence standard is a question of law. *See Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). Substantial evidence review is essentially "a rational-basis test to determine, as a matter of law,

whether an agency's order finds reasonable support in the record." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.). To meet the substantial evidence standard, one must show "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *CPS Energy v. Public Util. Comm'n of Tex.*, 537 S.W.3d 157, 169 (Tex. App.—Austin 2017, pet. filed). We presume that the Board's order is supported by substantial evidence. *Id.*

The Board's decision was based on section 164.051 of the Medical Practice Act, which provides that the Board may refuse to issue a license to practice medicine to someone who:

> is disciplined by a licensed hospital or medical staff of a hospital, including removal, suspension, limitation of hospital privileges, or other disciplinary action, if the board finds that the action: (A) was based on unprofessional conduct or professional incompetence that was likely to harm the public; and (B) was appropriate and reasonably supported by evidence submitted to the board.

TEX. OCC. CODE ANN. § 164.051(a)(7) (West 2012). According to Haberman, he was not subject to "disciplinary action"; was not disciplined by a licensed hospital or the medical staff of one; did not face removal, suspension, or limitation of his hospital privileges; and did not have action taken against him that was based on professional incompetence likely to harm the public. We will address each of Haberman's challenges in turn.

Disciplinary Action

The Board concluded that Haberman's dismissal from the residency program constituted disciplinary action by a licensed hospital or medical staff of a hospital under section 164.051(a)(7). Haberman asserts that substantial evidence does not support this

4

finding. Haberman contends that "disciplinary action" concerns behavior that the institution deems unacceptable, and does not encompass action meant to regulate academic matters.

In the administrative hearing, Haberman testified that he was never disciplined while in the postgraduate training program. According to Haberman, his probation and dismissal from the program were based on academic issues. During cross-examination, Haberman acknowledged that, other than being a resident, he did not have experience in physician discipline.

Dr. David Newton, the former director of the pathology residency program Haberman attended, testified that he completed the Board's form for verification of Haberman's postgraduate medical training. One of the questions asked whether Haberman had ever been "warned, censured, disciplined, [or] had admissions monitored or privileges limited." Newton answered "yes" in response to that question. He explained that he answered affirmatively because Haberman had been placed on remediation, had been placed on an individual performance improvement plan, and he was ultimately recommended for termination from the program. He also answered "yes" in response to the question asking whether Haberman had been placed on probation, asked to withdraw, or reprimanded, stating that "probation and remediation are sort of similar," and that Haberman "had also been reprimanded on multiple occasions." Newton testified that Haberman's performance in the residency program was not satisfactory; evaluations indicated Haberman made errors and had difficulty performing bone marrow biopsies, properly administering anesthesia, and arriving at an accurate diagnosis. Newton gave Haberman the rating of "poor" on the question of professional ability.

5

On cross-examination, Newton agreed that academic probation and disciplinary probation were different things. He stated that he was not referring to "aberrant behavior" but to Haberman's ability and his progression in the residency program. Newton also agreed that Haberman "was doing fine in clinical pathology."

Monique Johnston, the Board's licensure manager, testified that the Board's concerns about Haberman's application for licensure were based on Haberman's competence during his training program, remediation during training, and his subsequent dismissal from the program. She stated, "So the last period of his practice was in regards to his competence, and there was disciplinary action. So that was of concern for the Board Staff." According to Johnston, disciplinary action "would attest to someone's clinical competence or their professional character, depending on what the issues were."

The testimony from Newton and Johnston indicates that "disciplinary action" may encompass Haberman's probation during and dismissal from the graduate program. We conclude that substantial evidence supports the Board's conclusion that Haberman's dismissal from the residency program constituted a disciplinary action within the meaning of the statute.

Action by a Licensed Hospital

Next, Haberman challenges whether his dismissal was an action "by a licensed hospital." Dr. Newton testified that the residency program Haberman attended is located in a hospital, namely Penrose-St. Francis in Colorado Springs. He explained that the hospital is the sponsoring institution for the program and pays the residents their salaries. His pathology group is contracted to run the residency program and is reimbursed by the

6

hospital.  Newton testified that his group recommended to the hospital's graduate education committee that Haberman be dismissed, and the hospital then dismissed Haberman from the program.

Haberman concedes in his brief that Colorado law, like Texas law, requires a hospital to be licensed by the state.  During the hearing, Haberman acknowledged that he signed a resident employment agreement with an entity identified as "Catholic Health Initiatives Colorado [which] is doing business as Centura Health, Penrose-St. Francis Hospital, 'the Hospital.'"  The agreement recites that "the Hospital" includes the pathology residency program which employed and educated Haberman.  Haberman's application reflected that he obtained work experience during his pathology residency at "Penrose Hospital."  Haberman also listed "Penrose Hospital" as the evaluating hospital/institution on his form for verification of postgraduate training.

We conclude that this is substantial evidence supporting the Board's finding that "Penrose-St. Francis is a hospital" and its conclusion that Haberman's dismissal from the residency program "constituted a disciplinary action by a licensed hospital or medical staff of a hospital."

Action by Medical Staff

Haberman next challenges whether his dismissal was an action by a "medical staff of a hospital."  Newton explained that his pathology group "can't do anything regarding termination of a resident, as they are hospital employees," but that they could recommend to the hospital's graduate medical education committee that a resident be terminated. The evidence showed that Haberman was employed by Penrose-St. Francis, and that the

7

residency program was sponsored by and part of the hospital. Newton testified that Haberman could not participate in the residency program without signing the resident employment agreement with the hospital. Newton further testified that the members of the graduate medical education committee who recommended that Haberman be terminated were employees or medical staff of the hospital.

We conclude that substantial evidence supports the Board's conclusion that Haberman's dismissal constituted action by the "medical staff of a hospital."

Removal, Suspension, or Limitation on Hospital Privileges

Haberman next asserts that the action by the residency program "was not to remove, suspend or limit" his hospital privileges. We note that not only did the Board not make any such finding or conclusion, it was not required to do so. Under the plain language of section 164.051, discipline *includes* "removal, suspension, [and] limitation of hospital privileges," but discipline is not *limited* to those actions. Because the Board made no finding of fact or conclusion of law that Haberman's hospital privileges were affected, we find that Haberman's complaint is without merit.

Based on Professional Incompetence Likely to Harm the Public

In his final substantial-evidence challenge, Haberman argues that his dismissal was not a disciplinary action based on professional incompetence likely to harm the public. Haberman maintains that none of the complained-of errors on which his termination was based "related to the independent practice of medicine." Essentially, he contends that because his mistakes were made in the process of his graduate education, they do not constitute "professional incompetence."

Newton testified that the pathology staff had enough concerns about Haberman's errors that they provided direct supervision for him and reduced the volume of his gross dissection work by about half. Newton stated that had Haberman not been closely supervised, his errors could have been harmful to patients. Newton recounted several instances of misdiagnosis by Haberman, which could have led to improper treatment or even the "patient's demise."

The Board found that Haberman "made several significant errors or omissions that resulted in, or had the potential to result in, the misdiagnosis of cancers and other serious infections in patients" and that such errors, if not caught by Haberman's supervisors, "could have seriously harmed patients." The Board concluded that Haberman's dismissal "was based on professional incompetence that was likely to harm . . . the public." We conclude that the evidence demonstrates that Haberman lacked or failed to develop certain professional skills or abilities; therefore, substantial evidence supports the Board's conclusion.

Haberman's first issue is overruled.

Issue 2: Statutory Authority

In his second issue, Haberman claims that the Board's final order exceeds the statutory authority of the Board. According to Haberman, the Board exceeded its statutory authority when it found that the actions of the graduate medical program constituted disciplinary action by a licensed hospital or medical staff of a hospital in violation of section 164.051(a)(7).

A state agency has "only those powers expressly conferred upon it by the Legislature." *Public Util. Comm'n v. City Public Serv. Bd.*, 53 S.W.3d 310, 316 (Tex. 2001). But "when the Legislature expressly confers a power on an agency, it also impliedly intends that the agency have whatever powers are reasonably necessary to fulfill its express functions or duties." *Id.* An agency's construction or interpretation of a statute that it is charged with enforcing is entitled to serious consideration by reviewing courts, so long as that construction is reasonable and does not contradict the plain language of the statute. *Employees Ret. Sys. v. Jones*, 58 S.W.3d 148, 151 (Tex. App.—Austin 2001, no pet.).

Section 164.051(a)(7) gives the Board statutory authority to refuse to issue a license to practice medicine to a person who "is disciplined by a licensed hospital or medical staff of a hospital, including removal, suspension, limitation of hospital privileges, or other disciplinary action." The Board must determine that "the action was based on unprofessional conduct or professional incompetence that was likely to harm the public; and was appropriate and reasonably supported by evidence submitted to the board." TEX. OCC. CODE ANN. § 164.051(a)(7).

The statute governing licensure invests the Board with discretion to decide whether to issue a license to practice medicine to an individual based on conduct that violated section 164.051. Haberman's application was denied on grounds identified in the statute and, as we have discussed above, the Board's decision was supported by substantial evidence. The Board did not exercise any power beyond its statutory grant of authority.

Because we conclude the Board did not exceed its statutory authority in declining to issue Haberman a license based on section 164.051(a)(7), we overrule Haberman's second issue.

Issue 3: Arbitrary or Capricious

In his third issue, Haberman contends that the Board's final order is arbitrary or capricious or characterized by abuse of discretion or a clearly unwarranted exercise of discretion. "An agency's decision is arbitrary or results from an abuse of discretion if the agency: (1) failed to consider a factor the legislature directs it to consider; (2) considers an irrelevant factor; or (3) weighs only relevant factors that the legislature directs it to consider but still reaches a completely unreasonable result." *City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 184 (Tex. 1994).

Appellant argues that the Board failed to consider factors relating to the elements of section 164.051(a)(7). He alleges the Board "failed to consider that the GME program did not discipline Dr. Haberman," "failed to consider that the actions of the GME program were not taken by a licensed hospital or any hospital at all," and "failed to consider that the GME program's action were [sic] not those of a medical staff of a hospital not based on professional incompetency."

Appellant's third issue amounts to a repackaging of the arguments made in his first issue. In addressing appellant's first issue, we concluded that substantial evidence supported the Board's determination that appellant was subject to disciplinary action; was disciplined by a licensed hospital or the medical staff of a hospital; and had action taken against him that was based on professional incompetence likely to harm the public. On

11

this record, we conclude that the Board's order is not arbitrary or capricious.  We overrule Haberman's third issue.

## Conclusion

We affirm the decision of the Board.


Judy C. Parker
Justice