# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00377-CV

---

**Angela Davis, as President of NEA-Dallas (a Local Affiliate of Texas State Teachers Association), on behalf of All Affected Members and Named Individuals, Appellant**

**v.**

**Mike Morath, Commissioner of Education of The State of Texas, and Dallas Independent School District, A Public Body Corporate, Appellees**

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-002145, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## CONCURRING AND DISSENTING OPINION

In this appeal, certain teachers (the Teachers) employed with the Dallas Independent School District (DISD) filed a grievance with DISD's Board of Trustees (the Board) regarding: (1) DISD's Teacher Excellence Initiative (TEI) appraisal system for the school year 2014–2015; (2) the TEI Scorecards (the Scorecards)—which set forth a teacher's 2014–2015 evaluation rating and 2015–2016 effectiveness level—that the Teachers received in September 2015; and (3) an alleged decrease in the Teachers' salary. The Board dismissed and denied the grievance as untimely. The Teachers then appealed to the Commissioner. Agreeing with the Board, the Commissioner issued findings of fact and conclusions of law determining that the

grievance was untimely; yet, rather than affirm the Board's decision, he dismissed the appeal for lack of jurisdiction. The district court affirmed.

The Court concludes that the Commissioner had jurisdiction over the Teachers' appeal from the Board's decision, and I agree. *See* Tex. Educ. Code § 7.057. The Commissioner's dismissal for lack of jurisdiction is therefore "affected by other error of law" and his decision must be reversed if the Teachers' substantial rights have been prejudiced. *See* Tex. Gov't Code § 2001.174(2)(D). In my opinion, given the unique procedural posture of this case, the Commissioner's supporting findings and conclusions may serve as grounds for affirming the Commissioner's decision if they satisfy the substantial evidence rule. If so, the Teachers' statutory right to have those issues determined by the Commissioner was not prejudiced by the Commissioner's ultimate disposition of dismiss rather than affirm. *See id.* § 2001.174; Tex. Educ. Code § 7.057. I therefore concur with this Court's decision affirming the Commissioner's dismissal of the Teachers' complaints regarding the TEI and their decrease in salary for the reasons stated in the Commissioner's supporting findings and conclusions. I respectfully dissent, however, from this Court reversing the Commissioner's dismissal of the Teachers' complaints regarding the Scorecards and remanding that issue for further proceedings. Because the Commissioner's supporting findings and conclusions on this issue satisfy the substantial evidence rule, I would affirm.

## DISCUSSION

The Court and I agree that pursuant to *Texas Commissioner of Education v. Solis*, section 7.057(a) of the Texas Education Code provides the Commissioner with jurisdiction over the Teachers' appeal from the Board's decision on their grievance. 562 S.W.3d 591, 602 (Tex.

2

App.—Austin 2018, pet. filed) ("Section 7.057 of the Texas Education Code provides for an appeal to the Commissioner when a person is aggrieved by an action or decision of a board of trustees that violates Texas school law. The Commissioner may not, through his rules or policies, narrow the availability of that appeal."). Thus, the Commissioner's decision to dismiss the appeal for lack of jurisdiction was "affected by other error of law" and this Court must reverse and remand "if substantial rights of the appellant have been prejudiced" by this error of law. *See* Tex. Gov't Code § 2001.174(2)(D).[1]

In most scenarios, that would be the end of the inquiry—this Court would reverse and remand for further proceedings for the Commissioner to consider the merits of the grievance. Otherwise, the substantial rights of the grievant—namely, to have the Commissioner consider and decide the merits of the appeal from the Board's decision, *see* Tex. Educ. Code § 7.057— would be prejudiced. This case, however, presents the unique circumstances of the Commissioner making express findings, conclusions, and decisions that establish that the Teachers' grievance was untimely—which the Commissioner considered necessary to resolve

---

[1] Review of the Commissioner's decision under section 7.057 "is governed by the same analysis as in the district court and before the Commissioner—the familiar 'substantial-evidence' rule that is codified in Section 2001.174 of the Administrative Procedure Act." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 148 (Tex. App.—Austin 2017, no pet.); *see Morath v. Cano*, No. 03-15-00799-CV, 2017 WL 3585252, at *3 & n.10 (Tex. App.—Austin Aug. 17, 2017, no pet.) (mem. op.) (collecting cases). The Commissioner's decision should be reversed only if the party challenging the decision demonstrates that the party's substantial rights have been prejudiced. *See Mitchell v. Texas Med. Bd.*, No. 03-13-00502-CV, 2015 WL 1778289, at *3 (Tex. App.—Austin Apr. 15, 2015, pet. denied) (mem. op.) ("To warrant reversal or remand, therefore, the reviewing court must conclude that (1) substantial rights of the appealing party have been affected because of (2) one or more of the reasons listed in section 2001.174(2)(A)–(F)."); *Citizens Against Landfill Location v. Texas Comm'n on Envtl. Quality*, 169 S.W.3d 258, 264 (Tex. App.—Austin 2005, pet. denied) ("[T]he agency's decision should be reversed only if the party challenging the decision demonstrates that the absence of substantial evidence has prejudiced the party's substantial rights.").

3

the jurisdictional issue[2]—and that the Teachers waived any individual complaints by not specifically excepting to the proposal for decision (PFD) prepared by the administrative law judge (ALJ). These findings, conclusions, and decisions—if supported by substantial evidence—establish that the Commissioner should have affirmed the Board's decision to dismiss the grievance pursuant to DISD's grievance policy. *See* Tex. Educ. Code § 11.1511(b)(13) (providing that board of trustees of independent school districts shall by rule adopt process for hearing complaints); 19 Tex. Admin. Code § 157.1073(h) (Tex. Educ. Agency, Hearings Brought Under Tex. Educ. Code § 7.057) (providing that Commissioner may affirm or reverse board's decision pursuant to substantial evidence review); *cf. Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 442 (Tex. App.—Austin 2011, no pet.) (noting Commissioner concluded district's decision to dismiss grievance on basis of untimely filing was supported by substantial evidence and *affirmed* district's decision). And the Commissioner implies in his briefing that if his decision is reversed and remanded, he would "reform the relief from dismissal to affirmance" without changing the findings and conclusions.[3]

Although the Commissioner's findings, conclusions, and decisions were made in the context of an incorrect jurisdictional determination, the Teachers will not be able to meet

---

[2] The substantial evidence standard would govern review of jurisdictional fact findings if the Commissioner had correctly determined that he lacked jurisdiction. *See Houston Indep. Sch. Dist. v. Simpson*, No. 03-12-00145-CV, 2013 WL 5878919, at *3 (Tex. App.—Austin Nov. 1, 2013, no pet.) (mem. op.) ("Where, as here, the Commissioner makes fact findings necessary to resolve the jurisdictional issue based on an evidentiary record developed through an adjudicative process, we review those fact findings under the substantial-evidence standard.").

[3] The Commissioner states, "Because here the Commissioner specifically concluded that the teachers' grievance was untimely, . . . (COLs #3), there is no reason for this Court to remand to the Commissioner to reform the relief from dismissal to affirmance. In this case, dismissing the teachers' claim instead of denying it would be harmless error, for the Commissioner's conclusion that the teachers' grievance was untimely was reasonable and therefore the teachers have not been prejudiced for they are not entitled to relief."

4

their burden to demonstrate that their substantial rights have been prejudiced if these "administrative findings, inferences, conclusions, or decisions" (1) establish that the Commissioner should have affirmed the Board's decision to dismiss the grievance and (2) are sustained on review under the substantial evidence rule.[4] *See* Tex. Gov't Code § 2001.174(2); *cf. Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.) ("Substantial-evidence analysis entails two component inquiries: (1) whether the agency made

---

[4] For this reason, it is my opinion that the Court exceeds the scope of its review in resolving issues that were not addressed in the Commissioner's decision. For example, the Court considers whether section 21.352(a) of the Texas Education Code is directory or mandatory in requiring a yearly appraisal. *See ante* at ___ (citing Tex. Educ. Code § 21.352(a)). The Court justifies addressing this issue by stating that "the applicable standard of review requires us to consider whether . . . to dismiss the appeal on some other reasonable basis in this record" or "[u]nder substantial evidence review of fact-based determinations, . . . 'whether the record demonstrates some reasonable basis for the agency's action.'" *Ante* at ___ (quoting *AEP Tex. Cent. Co. v. Public Util. Comm'n*, 345 S.W.3d 60, 68 (Tex. 2011)). But whether section 21.352 is directory or mandatory is neither a "reasonable basis" for the Commissioner's action of *dismissing* the appeal for lack of jurisdiction nor a "fact-based determination[]." And by expressly dismissing the Teachers' appeal, the Commissioner made the determination that he did not have jurisdiction to consider the merit issue of whether section 21.352(a) is directory or mandatory. For the reasons described more fully in the following sections, it is my opinion that the Court need not reach this issue because the Commissioner's decision to dismiss can be affirmed given (1) his express determination, which included findings and conclusions, in his decision that the grievance was untimely, (2) those findings, conclusions, and decisions are sustained on review under the substantial evidence rule, and (3) the Teachers' substantial rights were not prejudiced by the dismissal although the dismissal was affected by other error of law because the Commissioner expressly considered and determined the issue of timeliness in his decision. But even if I agreed with the Court that the grievance regarding section 21.352(a) was timely raised, I would not address whether that statute is directory or mandatory. Section 7.057(a) of the Texas Education Code provides the Teachers with a right to appeal to the Commissioner. Tex. Educ. Code § 7.057(a). If the Teachers' grievance as to section 21.352(a) was timely, the Teachers would be entitled to have the Commissioner consider the merit issue of whether it is directory or mandatory. By dismissing for lack of jurisdiction—a determination affected by other error of law—without expressly considering this issue in his decision, the Commissioner prejudiced the Teachers' substantial rights under section 7.057(a) to have that issue considered by the Commissioner. Accordingly, pursuant to section 2001.174(2)(D), if the Court concludes that the Teachers' grievance was timely, this Court must reverse and remand on this issue without determining the merit issue, which the Court fails to do. *See* Tex. Gov't Code § 2001.174(2)(D).

5

findings of underlying facts that logically support the ultimate facts and legal conclusions establishing the legal authority for the agency's decision or action and, in turn, (2) whether the findings of underlying fact are reasonably supported by evidence."). This approach promotes judicial economy by allowing a reviewing court to affirm rather than to reverse and remand to have the Commissioner issue the exact same decision—merely reforming the disposition from dismissal to affirm—for consideration on appeal. Moreover, this approach is consistent with our recent decision in *Solis*. 562 S.W.3d at 602–04. In *Solis*, this Court concluded that the Commissioner incorrectly determined that it did not have jurisdiction over Solis's appeal from the decision by the board of trustees, but this Court did not immediately reverse and remand upon making this conclusion. *Id.* at 602. Instead, this Court first noted that "[w]hile the party may be found to have waived that complaint or failed to preserve it for a subsequent appeal to the Commissioner, it does not follow that the Commissioner lacks jurisdiction over the appeal itself." *Id.* Then, this Court proceeded to "consider whether Solis was required to seek relief from the board of trustees in order to preserve for Commissioner review her claim." *Id.* Although this Court ultimately concluded that "Solis did not waive that claim by not raising it at the local level," *id.* at 604, there would be no need for this Court to consider the issue if Solis was entitled to a reversal of the Commissioner's decision that he did not have jurisdiction over Solis's appeal and remand for further proceedings without meeting her burden to demonstrate that her substantial rights have been prejudiced. The fact that this Court considered the merits of whether Solis preserved error before reversing and remanding implies that this Court could have affirmed the Commissioner's decision to dismiss for lack of jurisdiction had Solis not preserved error for Commissioner review, even though the jurisdictional decision was "affected by other error of law." *See* Tex. Gov't Code § 2001.174(2)(D).

6

Following *Solis* and pursuant to section 2001.174, I proceed with a review of the Commissioner's "administrative findings, inferences, conclusions, or decisions" under the substantial evidence rule. *See id.* § 2001.174. In conducting this review, I presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the appellant to demonstrate otherwise. *See Froemming v. Texas State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 791 (Tex. App.—Austin 2012, no pet.); *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 751 (Tex. App.—Austin 2006, pet. denied). "Essentially, this is a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record." *Jenkins*, 537 S.W.3d at 149 (citing *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452–52 (Tex. 1984)); *see id.* at 149–50 (describing "well-established standard of review").

**Untimeliness of Grievance**

I agree with the Court that substantial evidence supports the Commissioner's decision—which included findings and conclusions—that "the Teachers' facial grievance as to the components of the TEI system itself" was untimely. *Ante* at ___. And the Teachers have not demonstrated how their substantial rights were prejudiced by the Commissioner dismissing this portion of their grievance instead of affirming the Board's dismissal and denial.

The Court, however, also concludes that there was no reasonable basis to determine that the Teachers' grievance as to not receiving an appraisal during the school year was untimely. DISD's grievance policy requires, "A grievance form must be filed no later than ten days from the date the employee first knew or, with reasonable diligence, should have known of the decision or action giving rise to the grievance or complaint." The Court claims that it was

7

not reasonable to conclude that the "*omission* of an appraisal by the end of the school year constitutes a 'decision or action' triggering the need for a teacher to file a grievance under the plain language" of DISD's grievance policy. *Ante* at ___. In my opinion, this complaint concerns a "decision or action" and substantial evidence in the record supports the Commissioner's decision that the Teachers' grievance was untimely as to this complaint.

To consider whether the grievance complained of is a "decision or action," I look to the Teachers' complaint. The complaint in their petition to the Commissioner, which is virtually identical to the complaint in the grievance form before DISD's Board, states:

> *The TEI system* does not give the teacher a final evaluation during the appraisal school year, but rather *gives* the teacher this information only after the school year has ended by way of the Scorecards received on or around September 18, 2015. Those Scorecards, received in the 2015–2016 school year purported to evaluate the teachers' performance for the 2015–2016 school year. *This process* deprives the teacher of a conference that is diagnostic and prescriptive with regard to any remediation identified by the evaluator that may be needed in overall performance by category during the current school year. Further, *this process* violates the Texas Education Code § 21.352 which requires that a "district option" appraisal system must conduct the appraisal "at least once during each school year."

(Emphases added.) Thus, the Teachers complain about what "[t]he TEI system . . . gives" and about "this process"—i.e., complaints about the components of the system or process adopted by DISD or, in other words, a "decision or action" by DISD.

To determine whether the Teachers' grievance as to this component of the TEI system or process was timely, I consider when the Teachers "first knew or, with reasonable diligence, should have known" of this component giving rise to their complaint.[5] The

---

[5] I assume for purposes of this analysis that the Teachers are correct that the summative annual appraisal conducted during the 2014–15 school year is not the "appraisal" contemplated by section 21.352(a) of the Texas Education Code. Because the Commissioner's decision can be

Commissioner entered a finding of fact that the "[Teachers'] challenges to the components of the [TEI] program were not filed within ten business days of [the Teachers] learning of the components or of when [Teachers] with reasonable diligence should have known of the components." In the decision, the Commissioner noted:

> The TEI is based on [DISD's] policies. There are three policies and several official interpretations of policies that are relevant to [the Teachers'] claims concerning [DISD's] appraisal process. DNA (LEGAL), DNA(LOCAL[)], and DNA(REGULATION) set out the structure of [DISD's] appraisal program. Each of these policies was adopted months before the grievances were filed. [DISD]'s teachers received a full day's training in the TEI evaluation process in August 2014. A number of district publications further explain the process. The most significant publications are the TEI Guidebook, updated March 18, 2015, the TEI Rulebook dated January 6, 2015, the Teacher Performance Rubric, revised December 19, 2014, the SLO Rubric, revised June 26, 2014, and the TEI Calendar for the 2014–2015 school year. In addition, [DISD] provided much information about the TEI program on[]line. [The Teachers'] challenges to the components of the TEI program were not filed within ten business days of [the Teachers] learning of the components or of when [the Teachers] with reasonable diligence should have known of the components.

The TEI Guidebook provides a draft "Category A Teacher Evaluation Scorecard 2014–15" that demonstrated that the Scorecard would show the points earned for the categories of teacher performance, student perceptions, and student achievement; the total points earned; and an evaluation rating and effectiveness level. The DNA(REGULATION) provides that DISD "will use the evaluation ratings to determine teacher effectiveness levels" and that "*[a]t the beginning of the 2015–2016 school year*, each teacher will receive one of the following effectiveness levels based on a teacher's evaluation rating from the 2014–15 school year . . . ." (Emphasis added.) The TEI Guidebook states in its "Summary of Evaluation Process" that in "September–October

---

affirmed without reaching the merits of this question, I would not reach or decide this issue and respectfully dissent from the Court's determination of this issue.

9

2015" the "Teachers receive final evaluation rating and effectiveness level." The TEI Evaluation Calendar for the 2014–2015 school year also provides this exact same information.

In my opinion, the Court need not determine the exact date that the Teachers "first knew or, with reasonable diligence, should have known" that they would receive their final evaluation rating as shown on the Scorecards in the Fall of the 2015–2016 school year and not in the 2014–2015 school year. Substantial evidence exists in the record that no later than the end of the 2014–2015 school year—and most likely much earlier—the Teachers "first knew or, with reasonable diligence, should have known" that "[t]he TEI system does not give the teacher a final evaluation during the appraisal school year, but rather gives the teacher this information only after the school year has ended." And it is undisputed that the Teachers did not file a timely grievance from the end of the 2014–2015 school year.[6] Because (1) substantial evidence supports the Commissioner's finding of fact that the Teachers' grievance was untimely and (2) the Teachers have not demonstrated how their substantial rights were prejudiced because the Commissioner dismissed the cause rather than affirmed the Board's decision as to this portion of

---

[6] The Teachers' grievance is premised on the fact that their Scorecards were received after the school year had ended. The Teachers also raise a ripeness argument, claiming that their grievance was not ripe until the Scorecards were delivered. But ripeness generally concerns the jurisdiction of a *court* to decide a case. *See, e.g.*, *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). Here, as the Court and I have discussed, the Commissioner has jurisdiction and the issue is whether the grievance was timely filed pursuant to DISD's grievance policy. The Teachers do not identify and my review did not reveal a ripeness requirement incorporated into that policy. The Court asserts that the Teachers' complaint regarding TEI's failure to provide an appraisal during the school year as putatively required by statute became ripe only when DISD provided the Scorecard in the following school year. Thus, under the Court's theory, DISD could prevent the Teachers' claim from becoming ripe by failing to provide a Scorecard at all. In my opinion, this is incorrect. To the extent the doctrine of ripeness does apply, the Teachers' complaint would be ripe no later than when they allegedly were deprived of that statutory right—i.e., when the school year ended.

10

the grievance, I conclude that there are not grounds under section 2001.174 for reversal. *See* Tex. Gov't Code § 2001.174. Accordingly, I would affirm on this issue.[7]

**Waiver of Timeliness Requirement**

In their briefing before this Court, the Teachers assert that DISD waived reliance on its grievance policy's timeliness requirement. The grievance policy states that "[i]f a grievance form . . . is not filed timely . . . as set forth in this policy, the grievance shall be dismissed, on written notice to the employee, at any level during the grievance process." The Teachers argue that because DISD did not dismiss the grievance, it has waived its right to require grievances to be timely filed. Although I disagree, I consider it necessary to address the issue. If the Teachers are correct as to waiver, then the untimeliness of the grievance would not be a sufficient ground to affirm the Commissioner's decision. *See* Tex. R. App. P. 47.1 (requiring written opinion to address "every issue raised and necessary to final disposition of the appeal"). Because the Court does not address the Teachers' waiver argument in its opinion, I do so here.

In his decision, the Commissioner determined that "[a]t all levels of the grievance policy, the decision was made to dismiss the grievance"; "[a]llowing an appeal of a lower level

---

[7] The Court references a statement from the record that was made by an assistant principal to at least one of the Teachers. It is unclear what legal effect the Court considers this statement to have. Moreover, the Teachers neither reference this statement in their briefing before this Court nor provide any argument as to what effect such a statement may have to support overturning the Commissioner's decision. "[T]o guess at or make an argument for a party would violate the structure of our system of justice, be unwise, and change our role from neutral and impartial decision makers to advocates." *Isaac v. Villas del Zocalo 3*, No. 05-16-01338-CV, 2018 WL 360166, at *1 (Tex. App.—Dallas Jan. 11, 2018, no pet.) (mem. op.); *see In re Minix*, 543 S.W.3d 446, 465 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding) (Busby, J., concurring) ("Were we to raise this non-jurisdictional issue ourselves and develop arguments for or against its application, we would become advocates for a party rather than impartial decisionmakers—a role fundamentally at odds with our adversary system of justice. . . . We should stay in our lane.").

dismissal to the school board does not change the fact [th]at a lower level decision was made to dismiss the grievance"; and "a waiver did not occur in the present case as [DISD's] conduct was not unequivocally inconsistent with claiming a known right." The Commissioner explained that the hearing officer—in the Level I and II Decision letter—explicitly dismissed the grievance and that "[w]hile no form of the word 'dismiss' was used . . . by finding the grievance untimely and adopting the Level I and II decision, [DISD's] board dismissed the grievances."

The Commissioner's decision is confirmed by the record. In the decision letter, the hearing officer concluded that:

> a complaint regarding spot observations, a full observation, or a summative observation that was conducted in 2014–2015 is untimely because the teacher knew or should have known of the action before the end of the 2014–2015 school year. It is the decision of this Hearing Officer that any of the NEA Grievants' complaints based on events (such as these) of which the teachers knew, or should have known, during the 2014–2015 school year are untimely. . . . Further, the Board adopted DNA (Local) and made TEI the official policy of Dallas ISD on May 22, 2014. Shortly thereafter, in late May or early June of 2014, the TEI Guidebook was publicly posted online for the public (and any Dallas ISD employee) to see. Any teacher . . . could have filed a grievance within ten days after the Board adopted DNA (Local) or the TEI Guidebook was publicly posted. They did not do so. The NEA Grievants' challenge to DNA (Local) and the TEI framework is, therefore, untimely.

Although the hearing officer also evaluated the substance of the grievance, the officer made the analysis and decision "[s]ubject to this Hearing Officer's Decision regarding the untimely nature of the grievance." The hearing officer concluded that "[t]o the extent that the Grievants complain of decisions or actions of Dallas ISD that were known or should have been known, to them prior to September 18, 2015, as discussed above, the grievance is denied and dismissed as untimely in accordance with DGBA (Local)."

The hearing officer's decision was appealed to a three-person subcommittee of the Board. Pursuant to DISD's grievance policy, "The Board subcommittee's decision will serve as the final decision of the Board." The Board's decision expressly noted that it was not waiving any objection regarding timeliness. By a majority vote, the Board decided that the grievance was not timely and that the findings of fact and decision of the hearing officer "should be affirmed and the appeal of NEA-Dallas Group Grievance should be and is hereby denied."[8]

Both the hearing officer and the Board expressly refused to waive the issue of timeliness. DISD's grievance policy expressly states that "[a]ll time limits for filing grievances shall be strictly followed" otherwise "the grievance shall be dismissed . . . at any level during the grievance process." The hearing officer did dismiss the cause and the Board adopted at the hearing and affirmed in its written decision the hearing officer's decision. Although the hearing officer's decision letter and the Board's decision are no models of clarity as to their dispositions, I cannot conclude that waiver occurred by the Board's express language. And "[w]hile waiver may sometimes be established by conduct, that conduct must be unequivocally inconsistent with claiming a known right." *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005). But, as the Texas Supreme Court has explained, "[h]earing the merits of a party's complaint while reserving a ruling on its timeliness is not unequivocally inconsistent with later denying the complaint on the latter ground." *Id.* Accordingly, I agree with the Commissioner and cannot conclude that DISD waived the timeliness requirement for the Teachers to file their grievance.

---

[8] At the hearing before the Board's subcommittee, the motion that carried used the language that the Board "adopt and approve the findings of fact and the decision of the Level II hearing officer." DISD's grievance policy states that "[t]he Board subcommittee may render an oral decision," but that it shall also "provide the written decision."

13

**Exceptions to Individual Grievances**

Finally, I would also affirm the Commissioner's decision to dismiss the Teachers' grievances as to their individual complaints regarding the Scorecards. The Teachers waived any disagreement as to the PFD's findings and conclusions regarding the individual complaints by failing to satisfy the requirements for excepting to the PFD.

Section 157.1059 of the Texas Administrative Code imposes requirements upon exceptions to the PFD that if not met will waive a party's disagreements with the PFD's factual findings and legal conclusions:

> (d) All disagreements with the factual findings and legal conclusions of the proposal for decision must be made in the parties' exceptions to the proposal for decision or be waived.
>
> (e) The exceptions shall be specifically and concisely stated. The evidence relied upon shall be stated with particularity, and any evidence or arguments relied upon shall be grouped under the exceptions to which they relate.

19 Tex. Admin. Code § 157.1059(d)–(e) (Tex. Educ. Agency, Filing of Exceptions and Replies to Proposal for Decision). In his decision, the Commissioner concluded that "[a]s only Exceptions No. 10 and 23[] properly cite to the record to identify the evidence relied upon, only these exceptions properly identify facts that could call into question the [PFD]" and "[n]one of the Exceptions to the [PFD] specifically and concisely state any potential legal error."

In the PFD, the ALJ made the following statements as to the Teachers' individual complaints:

- While some named Petitioners made individual complaints in the grievance either these complaints are really about the TEI process as a whole or they are about specific procedural irregularities that had long since passed when the grievance was filed.

- No individual Petitioners contend that their Scorecards were improperly calculated.

14

- However, none of these complaints is about how an individual Scorecard was calculated. The individual complaints allege flaws in the process that occurred long before the individuals received their Scorecards. These complaints are also untimely.

The Teachers excepted to these statements in Exceptions 1, 8, and 19, stating:

- This statement is in direct contradiction to the evidence in the record.

- The ALJ has erred, and the finding should be removed from the decision.

- All the teachers' individualized arguments were presented at the District grievance hearings.

- NEA Dallas made numerous arguments that each challenged individual Scorecard[] was void and invalid as it was premised upon an unlawful appraisal system.

- All of NEA Dallas's arguments made in the grievance process pertained to the class members' Scorecards, and the manner in which each teacher was appraised . . . .

- Further, the grievance arose from the Scorecards—not school district Board policy.

But the Teachers do not "specifically" state how their complaints are individual complaints rather than "really about the TEI process as a whole" or "about specific procedural irregularities that had long since passed." And they do not "specifically" assert that they are complaining that the Scorecards were improperly calculated to disagree with the PFD. Other than to assert that "numerous arguments" as to the individual challenges were made at the grievance hearings, the Teachers do not specifically state what those arguments are or where or when at the hearings they were made. These exceptions do not satisfy the requirements of section 157.1059.

Accordingly, the Teachers have not demonstrated how their substantial rights were prejudiced by the Commissioner's dismissal as to their individual complaints. *See id.*; *see*

15

*also* Tex. Gov't Code § 2001.174(2). Because the Teachers have not met their burden, I would affirm the Commissioner's dismissal as to the individual complaints regarding the Scorecards.[9]

**CONCLUSION**

For these reasons, I would affirm the Commissioner's decision. I therefore concur with the Court's judgment affirming in part, but respectfully dissent from the Court's judgment reversing in part and remanding for further proceedings.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Filed: October 17, 2019

---

[9] The Teachers assert that even if the Commissioner had affirmed the Board's decision to dismiss, "[the Teachers] ha[ve] requested the Commissioner to issue an *independent order* that the Scorecards are void" and therefore the "request for an independent order from the Commissioner cannot be disposed of by 'affirming' the Board's vote." But the Teachers do not explain how the Commissioner would have jurisdiction under section 7.057 of the Texas Education Code to enter such an "independent order." *See* Tex. Educ. Code § 7.057(a) (providing for "appeal" to commissioner if person is aggrieved by "the school laws of this state" or "actions or decisions of any school district board of trustees" that violate school laws or employment contract).