# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00815-CV

---

**TJFA, L.P.; Environmental Protection in the Interest of Caldwell County; James Abshier; and Bryon Friedrich, Appellants**

**v.**

**Texas Commission on Environmental Quality and 130 Environmental Park, LLC, Appellees**

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-006632, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

---

### O P I N I O N

This dispute concerns 130 Environmental Park, LLC's (130 EP) application for a permit to construct and operate a new municipal solid waste facility (Facility) in Caldwell County. Following a contested-case hearing, the Texas Commission on Environmental Quality (Commission) issued a final order granting 130 EP's application. TJFA, LP; Environmental Protection in the Interest of Caldwell County; James Abshier; and Bryon Friedrich (collectively, TJFA) filed suit for judicial review of the Commission's order. The district court rendered judgment upholding the permit. We will affirm.

### BACKGROUND

We begin with an overview of the relevant statutory framework, the Solid Waste Disposal Act (the Act). The Act directs the Commission to "safeguard the health, welfare, and

physical property of the people and to protect the environment by controlling the management of solid waste." Tex. Health & Safety Code § 361.002(a). To accomplish this purpose, the Commission may "require and issue permits authorizing and governing the construction, operation, and maintenance of the solid waste facilities used to store, process, or dispose of solid waste under this chapter." *Id.* § 361.061. The Act also grants the Commission authority to prescribe the form and requirements of the permit application and the procedure for processing it. *Id.* § 361.064(a).

The Commission has exercised this authority and promulgated rules prohibiting anyone from storing, processing, removing, or disposing of solid waste without a permit or other authorization from the Commission. *See* 30 Tex. Admin. Code § 330.7 (2021) (Tex. Comm'n on Env't Quality, Permits Required). The Commission's rules divide the application into four parts and specify the contents of each. *See id.* §§ 330.57(a) (2021) (Tex. Comm'n on Env't Quality, Permit and Registration Applications for Municipal Solid Waste Facilities) ("The application for a municipal solid waste facility is divided into Parts I-IV."), .59 ("Contents of Part I of the Application"), .61 ("Contents of Part II of the Application"), .63 ("Contents of Part III of the Application"), .65 ("Contents of Part IV of the Application"). Generally, an application will not be declared administratively complete—meaning that it is ready for review and decision by the Commission—until the applicant has submitted all the required materials. *Id.* § 330.57(a); *see* Tex. Health & Safety Code § 361.068 ("Administratively Complete Application"). However, the Act gives the Commission discretion to process an application through a different, two-step procedure. The Commission "in its discretion may, in processing a permit application, make a separate determination on the question of land-use compatibility, and, if the site location is acceptable, may at another time consider other technical matters concerning the application."

2

Tex. Health & Safety Code § 361.069. If the Commission decides to employ this procedure, the applicant "shall submit a partial application consisting of Parts I and II of the application," which the executive director will "process . . . to the extent necessary to determine land-use compatibility alone." 30 Tex. Admin. Code § 330.57(a). If the Commission determines the land is suitable for use as a landfill, the applicant then submits the remainder of the application.

In September 2013, 130 EP applied for a permit to construct the Facility and requested a land-use-only determination. The Commission declared the application—consisting of Parts I and II—administratively complete on September 23, 2013. Three months later, the Caldwell County commissioners adopted an ordinance prohibiting the process or disposal of solid waste in most of the County, including the proposed site of the Facility (Disposal Ordinance). The Commission subsequently determined that the site was acceptable for use as a landfill, and 130 EP filed a complete application in February 2014. The executive director declared Parts III and IV administratively complete on February 28, 2014. After technical review, the executive director recommend that the Commission grant the application and prepared a draft permit. At 130 EP's request, the Commission referred the application to the State Office of Administrative Hearings for a contested-case hearing.

The case was assigned to two administrative law judges (ALJs), who admitted TJFA in opposition to the application. The ALJs conducted a final hearing on the case from August 15–26, 2016. TJFA argued that Section 363.112 of the Act barred 130 EP's application because the Disposal Ordinance prohibits processing or disposal of solid waste in the proposed location. *See* Tex. Health & Safety Code § 363.112(c)–(d). As alternate grounds, TJFA argued that 130 EP's geology expert had destroyed evidence, moved to strike his conclusions from 130 EP's application, and argued that the application failed to meet the Commission's standards

3

concerning surface water drainage, land-use compatibility, and flood protection. Whether 130 EP adequately addressed the effect the Facility would have on the Site 21 Dam and Reservoir—located approximately 3,000 feet downstream—was an especial point of contention. The ALJs subsequently issued a 211-page proposal for decision (PFD) recommending that the Commission grant the permit as proposed in the draft permit with three suggested changes:

- The Permit Boundary should be expanded to include the entire length of the access road from the entrance at US 183 to the entrance of the facility at the current Permit Boundary.

- The Permit Boundary should be expanded to include the entire screening berm.

- The operating hours for the Facility should be set at the standard hours provided in 30 TAC § 330.135.

The Commission voted to accept the PFD but rejected the first two changes. In September 2017, the Commission issued a final order that adopted almost all the ALJs' findings and conclusions of law, explained why it rejected others, and granted the permit. TJFA sought judicial review of the order in Travis County district court. *See id.* § 361.321(a) ("A person affected by a ruling, order, decision, or other act of the commission may appeal the action by filing a petition in a district court of Travis County."). The district court affirmed the Commission's order, and this appeal followed.

## ANALYSIS

TJFA challenges the district court's judgment affirming the Commission's grant of a permit to 130 EP in five issues. Specifically, TJFA argues that the Commission erred by granting the permit because the Commission cannot grant a permit for land covered by the Disposal Ordinance; the application's geological report is unreliable; the Commission unlawfully

4

rejected the ALJs' findings and conclusions; the application omitted crucial information regarding changes in surface water drainage patterns and flood protection; and the Commission's determination that the Facility is compatible with the Site 21 Reservoir and Dam is unsupported by substantial evidence.

**Standard of Review**

In a suit for judicial review of a final order under the Act, "the issue is whether the action is invalid, arbitrary, or unreasonable." *Id.* § 361.321(e). The "invalid, arbitrary, or unreasonable" standard incorporates the entire scope of review allowed by the "substantial evidence" standard codified in the Administrative Procedure Act. *See Texas Comm'n on Env't Quality v. Exxon Mobil Corp.*, 504 S.W.3d 532, 535 n.1 (Tex. App.—Austin 2016, no pet.); *Citizens Against the Landfill in Hempstead v. Texas Comm'n on Env't Quality*, No. 03-14-00718-CV, 2016 WL 1566759, at *1 (Tex. App.—Austin Apr. 13, 2016, no pet.) (mem. op.). Under that standard, we will reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions" are:

> (A) in violation of a constitutional or statutory provision;
>
> (B) in excess of the agency's statutory authority;
>
> (C) made through unlawful procedure;
>
> (D) affected by other error of law;
>
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

5

Tex. Gov't Code § 2001.174(2). We apply this analysis without deference to the district court's judgment. *See Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam); *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.).

**Effect of the Disposal Ordinance**

We begin with whether the Disposal Ordinance bars 130 EP's application as a matter of law. The Act prohibits the Commission from granting an application for a permit in any location where processing or disposing of municipal solid waste is prohibited by ordinance unless the application is pending before the Commission when the ordinance is passed. *See* Tex. Health & Safety Code § 363.112(c)–(d).[1] The Commission concluded that the Disposal Ordinance did not prohibit granting the permit because 130 EP's application for a land-use-only determination was pending before the Commission at the time Caldwell County enacted the Disposal Ordinance. TJFA argues that the Commission erred because Section 363.112 applies only to a complete application, i.e., one that includes Parts I - IV.

"Statutory interpretation involves questions of law that we consider de novo, even when reviewing agency decisions." *Aleman v. Texas Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019). Our goal in construing a statute is to ascertain and give effect to the legislature's intent, looking first to the "plain and common meaning of the statute's words." *Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 647 (Tex. 2020) (citing *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500 (Tex. 2010)). In discerning that meaning, we "consider the context and framework of the

---

[1] Section 364.012 of the Act is materially identical to Section 363.112 except that it applies only to counties. *See* Tex. Health & Safety Code § 364.012(f). We cite to Section 363.112 for convenience.

entire statute and construe it as a whole." *Aleman*, 573 S.W.3d at 802. "Where statutory text is clear, that text is determinative of legislative intent unless the plain meaning of the statute's words would produce an absurd result." *Texas Workforce Comm'n v. Wichita County*, 548 S.W.3d 489, 492 (Tex. 2018).

Section 363.112 prohibits the Commission from granting an application for a permit to process or dispose of solid waste in an area where those activities are prohibited "unless the governing body of the municipality or county violated Subsection (c) in passing the ordinance or order." Tex. Health & Safety Code § 363.112(d). Subsection (c) provides:

> (c) The governing body of a municipality or county may not prohibit the processing or disposal of municipal or industrial solid waste in an area of that municipality or county for which:
>
> > (1) an application for a permit or other authorization under Chapter 361 has been filed with and is pending before the commission; or
> >
> > (2) a permit or other authorization under Chapter 361 has been issued by the commission.

*Id.* § 363.112(c). The Act does not define "application," "filed with," or "pending." *See id.* "We typically 'look first to dictionary definitions' to 'determine a term's common, ordinary meaning.'" *Texas Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 208 (Tex. 2020) (quoting *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018)). Black's Law Dictionary defines an application as "a request or petition," *Application*, *Black's Law Dictionary* (11th ed., 2019), and "pending" as "remaining undecided; awaiting decision," *Pending*, *Black's Law Dictionary* (11th ed. 2019). To "file" means, as relevant here, "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record." *File*, *Black's Law Dictionary* (11th ed. 2019). Reading these definitions together, TJFA reasons that a

pending application is one that includes all required materials and is "ready for review and decision." Under this interpretation, an application for a land-use-only determination cannot satisfy Subsection 363.112(c) because a favorable determination "does not equate" to granting a permit "to construct and operate a landfill."

Although TJFA is correct that a favorable land-use determination does not equate to granting a permit, that does not necessarily mean an application for a land-use-only determination does not satisfy the statute's requirement of an application "pending before" the Commission. *See* Tex. Health & Safety Code § 363.112(c). Subsection 363.112(c) requires than an application be awaiting decision, but it does not specify whether an application must be pending a *final* decision. To answer that question, we turn to the statutory context. *See Aleman*, 573 S.W.3d at 802. TJFA argues that the Act refers to an application as "something that may be granted or denied," but the Act actually contemplates that the Commission will act on "administratively complete" applications. *See id.* § 361.066(b) (requiring submission of an administratively complete application). An application is administratively complete when "a complete permit application form and the report and fees required to be submitted with a permit application have been submitted" and the "application is ready for technical review in accordance with the rules of the commission." *Id.* § 361.068. Importantly, "[i]f an applicant does not submit an administratively complete application," then "the application is considered withdrawn[.]" *Id.* § 361.066(b). Thus, an application that is not administratively complete is not "filed with" the Commission. *See id.* § 363.112(c). Reading these provisions together, an application—for a land-use only determination or otherwise—is "filed with" and "pending before" the Commission when it is administratively complete and awaiting action by the Commission. *See id*.

8

Nevertheless, TJFA maintains that deciding land-use compatibility is not the same as deciding whether to grant a permit. However, determining land-use compatibility is necessarily part of the Commission's decision on a permit application. *See* 30 Tex. Admin. Code § 330.61(h) ("A primary concern is that the use of any land for a municipal solid waste facility not adversely impact human health or the environment."). The Act authorizes the Commission to address that matter separately from other technical issues, but it is part of the same decisional process. *See* Tex. Health & Safety Code § 361.069 (providing that Commission "in its discretion may, *in processing a permit application*, make a separate determination on the question of land-use compatibility, and, if the site location is acceptable, may at another time consider other technical matters concerning the application" (emphasis added)); *see also Northeast Neighbors Coal. v. Texas Comm'n on Env't Quality*, No. 03-11-00277-CV, 2013 WL 1315078, at *9 (Tex. App.—Austin Mar. 28, 2013, pet. denied) (mem. op.) (characterizing Section 361.069 as authorization to decide land-use compatibility "separately from the other aspects of the permitting process"). TJFA stresses that 130 EP's application contained only Parts I and II, but TJFA does not cite to any provision requiring applicants to submit all required materials before the Commission may begin processing a permit application. To the contrary, the Act gives the Commission authority to prescribe the requisite materials and the procedure for processing the application. *See* Tex. Health & Safety Code §§ 361.064, .068.

TJFA maintains that treating an application for a land-use-only determination as a pending application will have consequences that the legislature could not have intended. *See Bush*, 601 S.W.3d at 647 ("We may also consider . . . 'the consequences of a particular construction.'" (citing *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011))). Specifically, TJFA argues that this interpretation will undermine the authority of "local

9

governments to prohibit landfills where their judgment deemed them unsuitable." TJFA implies this would occur because local governments would have less notice and opportunity to participate. We disagree. As stated earlier, before acting on an application for a land-use-only determination, the Commission's executive director declares it to be administratively complete. *See* 30 Tex. Admin. Code § 330.57(a) (authorizing executive director to process land-use-only application).[2] That declaration triggers the Commission's obligation to mail a copy of an administratively complete application to "the mayor and health authority of a municipality in whose territorial limits or extraterritorial jurisdiction the solid waste facility is located" and "the county judge and the health authority of the county in which the facility is located." Tex. Health & Safety Code § 361.067(a). Each of those entities has a statutory right "to present comments and recommendations on the permit application before the commission acts on the application." *Id.* § 361.067(b). Moreover, when making a land-use-only determination, the Commission is under the same obligation to provide a public hearing for affected persons as when it decides all matters regarding the application at once. *See id.* §§ 361.069 ("A public hearing may be held for each determination in accordance with Section 361.088."), .088 (providing that, with exceptions not relevant here, Commission "shall provide an opportunity for a hearing to the applicant and persons affected"); 30 Tex. Admin. Code § 330.57(a) (providing that "an opportunity for a public hearing will be offered" before Commission makes land-use-only determination).[3]

---

[2] The executive director of the Commission declared 130 EP's application for a land-use-only determination to be administratively complete on September 27, 2013.

[3] TJFA is also concerned that applicants will be less likely to work with local governments and other stakeholders to resolve concerns. *See* Tex. Health & Safety Code § 361.063 (providing for voluntary process to resolve disputes with affected persons at outset of permitting process). Even if that is true, it does not alter our conclusion. In constructing statutes, courts "must take the Legislature at its word, respect its policy choices, and resist

10

TJFA also argues that rejecting its interpretation of Section 361.112 eliminates the distinction between an application and notice of intent to file a permit application. Citing provisions of the Act attaching legal consequences to filing a notice, *e.g.*, Tex. Health & Safety Code § 361.102(e) (prohibiting permits for landfill within certain distance of residences and other structures, measured on the date of notice), TJFA argues that "the Legislature knew how to use a notice as a triggering event if it wanted to" but did not do so here. *See, e.g.*, *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (per curiam) (orig. proceeding) ("We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted."). Rather, we have held that an application for a land-use-only determination constitutes a permit application for purposes of Subsection 363.112(c).

Construing Section 363.112 in the context of the entire Act, we conclude that an application is "filed with" and "pending before" the Commission when the application is administratively complete and awaiting action by the Commission. *See* Tex. Health & Safety Code § 363.112(c). There is no dispute that the executive director declared 130 EP's partial application to be administratively complete before the County enacted the Disposal Ordinance, and TJFA does not allege that the executive director acted outside his authority. *Cf. id*. § 361.064(a) (granting Commission authority to "prescribe "the form of and reasonable requirements for the permit application" and "the procedures for processing" it). We therefore conclude that the Commission did not err by concluding 130 EP's application was "pending" before it prior to the County's adoption of the Disposal Ordinance. *See id*. § 363.112(c). We overrule TJFA's first issue.

---

revising a statute under the guise of interpreting it." *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013); *see Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014) (stating that courts must not "second-guess the policy choices that inform our statutes").

**Admission of the Geology Report**

Next, TJFA argues that the ALJs erred by denying their motion to strike the Geology Report from 130 EP's application and their alternative request for a spoliation instruction. We review administrative rulings on the admission or exclusion of evidence under the same abuse-of-discretion standard applied to trial courts. *Swate v. Texas Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *2 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (mem. op.) (citing *Scally v. Texas State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 450 (Tex. App.—Austin 2011, pet. denied)). The same standard applies to a ruling on a request for a spoliation remedy. *See Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A court "abuses its discretion if it acts without reference to guiding rules and principles such that the ruling is arbitrary or unreasonable." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020).

The Commission requires that the application include a geology report, prepared by a qualified expert, that describes, among other things, "the results of investigations of subsurface conditions" at the site. *See* 30 Tex. Admin. Code § 330.63(e)(4). In 2013, 130 EP's experts entered the site and drilled bore holes, collected soil samples, and installed piezometers to monitor the groundwater. During this process, a driller collected soil samples and prepared a "field log" for each boring that included, among other things, the location of the bore hole and descriptions of the soil extracted at various depths. The driller then packaged the logs and accompanying samples together and shipped them to 130 EP's experts, Michael Snyder, P.E., and Gregory Adams, P.E. Snyder and Adams analyzed these samples and then created the "boring logs" required by the Commission's rules. *See id.* ("Each boring must be presented in the form of a log that contains, at a minimum, the boring number; surface elevation and location

12

coordinates; and a columnar section with text showing the elevation of all contacts between soil and rock layers, description of each layer using the unified soil classification, color, degree of compaction, and moisture content."). Snyder then prepared the geology report for 130 EP.

At some point after preparing the report, Snyder's company discarded the field logs and soil samples. In November 2015, TJFA filed a motion asserting that discarding these materials constituted spoliation of evidence. As a remedy, TJFA requested an order compelling 130 EP to allow TJFA to enter the site and conduct its own geology investigation. In the alternative, TJFA asked the ALJs to apply a spoliation presumption whereby they would presume that the destroyed information would be harmful to 130 EP's case. *See Brookshire Bros., Ltd.*, 438 S.W.3d at 22 (discussing presumption that destroyed evidence favors opposing party). The ALJs issued an order granting TJFA access to the site. After beginning its investigation, TJFA withdrew its request for a spoliation presumption, and the ALJs accordingly issued an order determining that the request was moot. Five months later, TJFA filed a renewed motion for a spoliation presumption. This motion was based on the same facts and asserted essentially the same legal arguments as did the prior motion. TJFA also moved to strike the report and any testimony based on it as unreliable. The ALJs overruled both motions and admitted the report and allowed Snyder to testify.

First, we consider whether it was an abuse of discretion to deny TJFA's motion to strike the Geology Report as unreliable. *See Scally*, 351 S.W.3d at 450 ("An ALJ, like a trial court, has broad discretion when deciding whether to admit expert testimony in a contested-case hearing[.]"). A qualified expert may offer opinion testimony if the testimony "is both relevant and based on a reliable foundation." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 348 (Tex. 2015). When assessing an expert's reliability, courts must "rigorously examine the

13

validity of facts and assumptions on which the testimony is based, as well as the principles, research, and methodology underlying the expert's conclusions and the manner in which the principles and methodologies are applied by the expert to reach the conclusions." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009). "If an expert 'br[ings] to court little more than his credentials and a subjective opinion,' his testimony will not support a judgment." *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997)).

TJFA argues that Snyder's report is essentially unsubstantiated because it is based on data—the soil samples, field notes, and field logs—that are unavailable. Without this data, TJFA explains, it cannot verify the reliability of Snyder's conclusions. More specifically, TJFA argues it cannot verify that Snyder accurately characterized the samples or the drilling logs. Snyder did not rely entirely on his observations of the samples to prepare the geology report; he also reviewed records of two preliminary drillings on the site, geological literature regarding the area, and laboratory analyses of the samples. TJFA does not dispute that this data supports Snyder's conclusions but contends that the true data "underlying" Snyder's conclusions are the soil samples, field notes, and field logs. Assuming that is true, we nevertheless disagree that observing the original soil samples and reviewing the field logs is the only way to determine if Snyder's conclusions are reliable. TJFA asked for permission to take soil samples so that it could "obtain the type of data necessary to test" Snyder's opinions. TJFA's expert examined the samples and prepared a report, which the ALJs observed "lends credence to and generally supports the basic findings and conclusions set forth in the Geology Report." Based on the record before us, we conclude that the ALJs did not abuse their discretion by overruling TJFA's motion to strike the report.

14

Next, TJFA argues that they were entitled to a spoliation presumption. The ALJs indicated that they denied TJFA's renewed request for a spoliation presumption because allowing TJFA to perform its own geological examination of the site was sufficient to remedy the prejudice resulting from the spoliation. TJFA argues that access to the site "was not a remedy" because TJFA had a right to access the site under the discovery rules. Although TJFA sought and obtained permission to conduct its own subsurface investigation during discovery, *see* Tex. R. Civ. P. 196.7 (Request or Motion for Entry Upon Property)[4], the purpose of a spoliation remedy is "to restore the parties to a rough approximation of their positions if all evidence were available," *see Brookshire Bros.*, 438 S.W.3d at 21. TJFA originally sought access to the site so that it could mount the same challenges to Snyder's conclusions it would have done if the original samples were available. Under these circumstances, the ALJs could have reasonably concluded that their allowing TJFA access to the site to conduct its own subsurface investigation restored the parties to a rough approximation of their positions if the samples, logs, and notes had been retained. We conclude the ALJs did not abuse their discretion by denying TJFA's request for a spoliation presumption. *See id.* at 27.

**Findings and Conclusions**

Next, TJFA challenges the Commission's rejection of several of the ALJs' proposed findings and conclusions. In its final order, the Commission deleted three proposed findings of fact and one proposed conclusion of law that were included in the PFD. TJFA argues

---

[4] Discovery in contested cases involving the Commission is "conducted according to the Texas Rules of Civil Procedure, unless commission rules provide or the judge orders otherwise." *See* 30 Tex. Admin. Code § 80.151(a) (Tex. Comm'n on Env't Quality, Discovery Generally).

that in doing so the Commission violated statutory restrictions on its authority to alter administrative findings and conclusions. *See* Tex. Health & Safety Code § 361.0832(c)–(d).

The disputed findings here regard the access road that 130 EP plans to build from the highway to the Facility's entrance and the screening berm it plans for the Facility's northern border.[5] The permit requires 130 EP to construct and maintain the road and the berm but does not include either improvement within the permit boundary, defined in the Commission's order as "[t]he land on which the Facility will be constructed and operated."[6] In several findings of fact and conclusions of law, the ALJs concluded that the permit boundary should be expanded to include the access road and the screening berm to preserve the Commission's ability to enforce all the permit's requirements.

Relevant findings of fact include:

> 69. 130EP has not justified why the entire length of the access road is not included within the Permit Boundary, even though it is a facility authorized by the permit.
>
> 70. The entire length of the access road from US 183 should be included within the Permit Boundary.
>
> 394. The entire screening berm 130EP will construct on the northern boundary of the Facility should be included within the Permit Boundary.

Proposed conclusion of law 21 states: "The entire length of the access road should be included within the Permit Boundary to ensure consistency with and enforceability of the permit's requirements." The Commission deleted these proposed findings and conclusions in its final

---

[5] 130 EP's application states it plans to construct a "vegetated screening berm" to limit the visibility of the Facility.

[6] No party has cited us to a uniform definition of "permit boundary" in a statute or the Commission's rules.

16

order, explaining that including the screening berm and access road in the permit is unnecessary to ensure the Commission's authority to enforce the permit's requirements pertaining to those structures.

Appellees argue that the three deleted findings of fact are substantively conclusions of law. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000) (noting that "the label attached, 'finding of fact' or 'conclusion of law,' is not determinative" and courts may treat ruling as finding of fact or conclusion of law according to its substance); *AEP Tex. Com. & Indus. Retail Ltd. P'ship v. Public Util. Comm'n of Tex.*, 436 S.W.3d 890, 915 n. 103 (Tex. App.—Austin 2014, no pet.) (same). A conclusion of law is "[a] statement that expresses a legal duty or result[.]" *Legal Conclusion*, *Black's Law Dictionary* (11th ed. 2019). Proposed finding 69 states the ALJs' determination that 130 EP failed to meet a legal standard, and findings 70 and 394 state the legal consequences of that determination. We therefore agree that the three omitted findings are substantively conclusions of law. *See Smith v. Houston Chem. Servs., Inc.*, 872 S.W.2d 252, 271 (Tex. App.—Austin 1994, writ dism'd) (concluding, in case under Act, that challenged finding was "patently a conclusion of law for it declares a legal effect or consequence").

The Commission "may overturn a conclusion of law in a contested case only on the grounds that the conclusion was clearly erroneous in light of precedent and applicable rules." Tex. Health & Safety Code § 361.0832(d). A conclusion of law "is considered clearly erroneous when the reviewing body 'is left with the definite and firm conviction that a mistake has been committed.'" *Hunter Indus. Facilities, Inc. v. Texas Nat. Res. Conservation Comm'n*, 910 S.W.2d 96, 104 (Tex. App.—Austin 1995, writ denied) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). This rule "is generally considered to give the

reviewing body broader authority than is allowed under a 'substantial evidence' review because a decision may be overturned despite its theoretical reasonableness." *Id.* (citing *Watson v. Gulf Stevedore Corp.*, 400 F.2d 649, 653 (5th Cir. 1968) (explaining that "findings may be clearly erroneous without being unreasonable so as to be upset under the substantial-evidence rule")). We review the Commission's decision that a conclusion of law is clearly erroneous under Section 2001.174(2) of the Government Code. *See id.* at 105; *see also* Tex. Gov't Code § 2001.174(2) (providing that reviewing court will reverse and remand agency findings or conclusions that are "in violation of a constitutional or statutory provision" or "in excess of the agency's statutory authority").

In the final order, the Commission explained that:

> Texas Water Code § 7.002 gives the Commission the authority to enforce provisions of the Texas Water Code, Texas Health and Safety Code, and any rules adopted under those provisions. Texas Water Code § 7.002 also authorizes the Commission to compel compliance with the rules, orders, permits, and other decisions of the Commission. That statutory authority is not limited to the confines of a permit boundary.

TJFA argues that the Commission's explanation does not permit a "definite and firm conclusion" that "a mistake ha[d] been committed." *See Hunter Indus.*, 910 S.W.2d at 104. While acknowledging that the Commission has statutory authority to enforce permits, TJFA argues that the Commission may not enforce the permit's requirements outside the permit boundary. We disagree.

TJFA finds this limitation in the rules stating that a permit becomes binding—and its term subject to enforcement—by virtue of the permittee's acceptance. *See* 30 Tex. Admin. Code §§ 305.124 (2021) (Tex. Comm'n on Env't Quality, Acceptance of Permit, Effect) ("Acceptance of the permit by the person to whom it is issued constitutes an acknowledgment

18

and agreement that such person will comply with all the terms and conditions embodied in the permit, and the rules and other orders of the commission."), .125(1) (Tex. Comm'n on Env't Quality, Standard Permit Conditions) ("The permittee has a duty to comply with all permit conditions. Failure to comply with any permit condition is a violation of the permit and statutes under which it was issued and is grounds for enforcement action, for permit amendment, revocation or suspension, or for denial of a permit renewal application or an application for a permit for another facility."). We interpret administrative rules "in the same manner as statutes," *Rodriguez v. Service Lloyds Ins.*, 997 S.W.2d 248, 254 (Tex. 1999), meaning that we seek to give effect to the agency's intent by "following the plain language of the rule," *Oncor Elec. Delivery Co. v. Public Util. Comm'n of Tex.*, 406 S.W.3d 253, 270 (Tex. App.—Austin 2013, no pet.). The plain language of these rules reflects that permit conditions are enforceable against the permittee, but the rules do not limit the geographic scope of the Commission's enforcement authority.[7] Such a limitation must arise, if at all, from the terms of a permit. We see nothing in 130 EP's permit stating that its requirements apply only within the permit boundary. To the contrary, the permit states on the first page that it is "granted subject to the rules and orders of the Commission and laws of the State of Texas." Precedent also favors the Commission's decision: the record includes evidence that the Commission has granted permits to several other facilities with access roads or ancillary structures, including screening berms, outside the permit boundaries. Based on the Commission's rules and previous precedent, we conclude the Commission did not err by coming to a "definite and firm conviction" that the ALJs were mistaken. *See Hunter Indus.*, 910 S.W.2d at 104. We overrule TJFA's third issue.

---

[7] As TJFA puts it elsewhere in its opening brief, "a permit is issued in personam, that is, to a specific person or entity" and is enforceable against that person or entity.

19

**Drainage Report and Flood Protection**

Next, TJFA argues that the Commission acted arbitrarily and capriciously by granting the permit even though 130 EP's application omitted crucial information required by the Commission's rules. *See Rodriguez*, 997 S.W.2d at 255 ("If the Commission does not follow the clear, unambiguous language of its own regulation, we reverse its action as arbitrary and capricious.").

First, TJFA argues that the surface-water-drainage analysis in 130 EP's application is insufficient to show that "existing drainage patterns will not be adversely altered" by constructing the Facility. *See* 30 Tex. Admin. Code § 330.63(c)(1)(C). The analysis must analyze changes in peak flow, velocities, and volumes to show that construction of the Facility will not "adversely alter[]" drainage patterns in the event of a 25-year storm. The Commission has issued guidance providing that the analysis should address conditions at the "permit boundary." *See* TCEQ Waste Permits Division, *Surface Water Drainage and Erosional Stability Guidelines for a Municipal Solid Waste Landfill*, at 3 (RG-417, May 2018), *available at* https://www.tceq.texas.gov/assets/public/comm_exec/pubs/rg/rg-417.pdf, (last visited July 20, 2021). TJFA argues that 130 EP's analysis improperly considered land outside the permit boundary with respect to changes at comparison points 7 and 8. 130 EP's analysis states that while "the 25-year storm runoff volume will increase at CP7 and decrease at CP8 (a net increase of 12.8 acre feet, approximately 12.5%), these changes will be insignificant compared to the receiving body, SCS Reservoir Site 21." Although this reservoir is outside the permit boundary in normal conditions, the record includes undisputed evidence that the reservoir expands into the permit boundary in the event of a 25-year storm, and, as such, 130 EP's analysis properly considered the reservoir when determining changes in drainage patterns at the permit boundary.

20

Second, TJFA argues that 130 EP's application omits crucial information regarding flood protection. If a proposed landfill site is within the 100-year flood plain, the applicant must "provide information detailing the specific flooding levels and other events (e.g., design hurricane projected by Corps of Engineers) that impact the flood protection of the facility." 30 Tex. Admin. Code § 330.63(c)(2)(C). TJFA argues that the Commission failed to consider the possibility of flooding from hurricanes and cites evidence that Governor Abbott included Caldwell County in his disaster declaration regarding Hurricane Harvey. However, 130 EP's flood report included extensive information regarding the impact of storms, including hurricanes, and TJFA does not explain what additional information is missing.[8] *See Heritage on San Gabriel Homeowners Ass'n v. Texas Comm'n on Env't Quality*, 393 S.W.3d 417, 424 (Tex. App.—Austin 2012, pet. denied) (explaining that agency orders are presumptively valid and that contestant "bear[s] the burden of proving otherwise").

Having decided that the surface water drainage analysis and flood protection information in 130 EP's application complied with applicable rules, we conclude that the Commission did not act arbitrary or capriciously by granting the permit.

**Land-Use Determination**

Finally, TJFA challenges the Commission's determination that the Facility is compatible with surrounding land-use, particularly the Site 21 Reservoir and Dam. *See* 30 Tex.

---

[8] TJFA also argues that 130 EP was required to include information regarding the maximum flood the Site 21 Dam could withstand and whether the changes in drainage patterns resulting from the Facility would adversely affect the dam. *See* 30 Tex. Admin. Code §§ 299.2(47) (defining probable maximum flood), .15(a)(1)(A) (setting minimum standards for percentage of probable maximum flood dams must meet). 130 EP was not required to include this information because Rule 299 concerns the design of dams rather than landfills. *See id.* § 299.15(a)(1)(A).

Admin. Code § 330.61(h) (providing that Commission will determine whether "use of any land for a municipal solid waste facility [will] not adversely impact human health or the environment").

Rule 330 "provides a framework for [the Commission's] analysis of land-use compatibility" but "neither the [A]ct nor the regulation[] define[s] compatibility or provide[s] a specific standard by which to determine compatibility[.]" *Northeast Neighbors Coal.*, 2013 WL 1315078, at *9. The Commission balances all relevant factors, and its determination is reviewed for substantial evidence. *See* Tex. Gov't Code § 2001.174(2)(e); *see also Northeast Neighbors Coal.*, 2013 WL 1315078, at *9. "Substantial evidence" review within the meaning of Subsection 2001.174(2)(e), is essentially "a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record." *Jenkins*, 537 S.W.3d at 149. Under this deferential standard, we presume that the Commission's order is supported by substantial evidence, and the burden is on TJFA to show otherwise. *See id.* "Although substantial evidence is more than a mere scintilla, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Personal Care Prods., Inc. v. Smith*, 578 S.W.3d 262, 266 (Tex. App.—Austin 2019, no pet.) (citing *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)).

Rule 330 provides that to assist the Commission in determining land-use compatibility, the applicant must "provide information regarding the likely impacts of the facility on cities, communities, groups of property owners, or individuals by analyzing the compatibility of land use, zoning in the vicinity, community growth patterns, and other factors associated with the public interest." 30 Tex. Admin. Code § 330.61(h). TJFA argues that the Commission erred

by ignoring 130 EP's failure to provide information regarding the Facility's effect on the Site 21 Dam. TJFA made essentially the same argument before the ALJs. In rejecting that argument, the ALJs explained:

> 130 EP thoroughly addressed potential adverse impacts of the Facility on the Site 21 Reservoir and Dam in the context of its compliance with other TCEQ rules pertaining to surface water drainage and floodplains. As previously stated in this PFD, the ALJs conclude that the Application met the requirements in the TCEQ's rules regarding surface water drainage and floodplains, and that the preponderance of the evidence indicates that development and operation of the Facility will not adversely impact or impair the District's easement rights or its operation of the Site 21 Dam and Reservoir.

The Commission invites us to uphold that approach here, but TJFA argues that 130 EP cannot satisfy Rule 330.61(h) "by proxy." In other words, TJFA argues that information submitted to satisfy other requirements cannot also satisfy Rule 330.61(h). Nothing in that rule prevents the Commission from considering information submitted in other parts of an application if it is relevant to determining land-use compatibility. TJFA's main complaint is that the record does not support the Commission's determination that the changes in drainage patterns caused by the Facility will not adversely impact the Site 21 Reservoir and Dam. However, one of 130 EP's experts, Steven Odil, P.E., testified that he consulted the Commission's Dam Safety Program to determine if the increase in volume would adversely impact the structure. The Program informed him that the increase in volume represents 1% of the reservoir's capacity during a 25-year-storm event, an "insignificant" increase. The application (which the ALJs admitted into evidence) also supports this conclusion:

> [T]he peak storage volume of the SCS Reservoir Site 21 and peak inflow to the reservoir from Dry Creek exceed 2,300 ac-ft and 3,800 CFS, respectively, during the 25-year storm event. Considering the proposed net changes within the water body of less than 4% decrease in peak discharge rates and less than 1% increase

23

in volume, the changes at CP7 and CP8 will not result in adverse alterations of existing drainage patterns.

TJFA does not address Odil's testimony or contest the statements in 130 EP's application but argues that further information is necessary because the Site 21 Dam is "high hazard," meaning that significant loss of life and property would result from a breach. *See* 30 Tex. Admin. Code § 299.14(3) (2021) (Tex. Comm'n on Env't Quality, Hazard Classification Criteria). The Commission found that the Site 21 Dam currently does not meet the design criteria applicable to high-hazard dams and that a rehabilitation plan has been proposed. And, nothing in the record reflects that the Dam Safety Program's representation is not credible. We conclude that the Commission's finding that the Facility is compatible with the Site 21 Dam and Reservoir is reasonably supported by the record. We overrule TJFA's final issue.

## CONCLUSION

We affirm the district court's judgment.

_____

Edward Smith, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed: July 23, 2021

24